OPINION OF THE COURT
Jasen, J.
On this appeal, we are asked to decide whether a trial court Judge has the power to dismiss a misdemeanor *197 complaint on the grounds of “failure to prosecute” and “calendar control”. Although we do not question the general authority of the Trial Judge to control his calendar, we hold, nonetheless, that in exercising this authority, he may not dismiss a pending criminal proceeding for “failure to prosecute”.
These appeals involve the dismissal of misdemeanor complaints by Judges of the New York City Criminal Court. In each case, it was found that the prosecutor had failed to convert the complaint into an information within a period of time established by the court.[1] In none of the cases, however, had the statutory speedy trial time period elapsed. The Appellate Term upheld the dismissals as proper exercises of the Judges’ discretion.
PEOPLE V DOUGLASS
Barry Douglass was arrested and charged with reckless endangerment in the second degree and harassment for allegedly tying a rope around complainant’s neck and dragging him along the ground for a distance of 80 feet. Defendant was directed to appear for arraignment on September 8, 1980. On that date, a misdemeanor complaint was sworn to by a police officer, based on information obtained from complainant. Douglass did not appear at his arraignment and a bench warrant was issued. The following day, Douglass voluntarily surrendered and the case was adjourned until October 6, 1980. Defendant was released on his own recognizance. When the parties appeared on October 6 and the People had not converted the misdemeanor complaint into an information by obtaining a supporting deposition from complainant, the charges were dismissed for “failure to prosecute”. Although the prosecutor explained that a corroborating affidavit had been sent to complainant a week earlier and that a response was expected, the court deemed the dismissal to be appropriate “to clear my calendar of such matters.” The records were then ordered sealed.
*198 PEOPLE V JONES AND LOGAN
Robert Jones and Harmeen Logan were seen by two witnesses allegedly stealing an attaché case from a person on July 17, 1980 in a Manhattan subway station. The following day, a misdemeanor complaint jointly charging the defendants with petit larceny and criminal possession of stolen property in the third degree was sworn to by a police officer based on information supplied by the two witnesses.
Defendants were arraigned on July 18 and the case was adjourned until July 24 to allow the prosecutor to file supporting affidavits. Subsequent adjournments were requested by all parties and on August 12 the court papers were marked final for conversion. When the parties appeared on August 26 and the prosecutor had not yet converted the complaint to an information, the court dismissed the charges for “negligent process of cases”. Sealing of the records was ordered 31 days hence.
PEOPLE V BALDWIN AND ST. HALAIRE
Gregory Baldwin and Kevin St. Halaire were observed allegedly breaking into an automobile and stealing two suitcases on October 6, 1980. On the same day, misdemeanor complaints sworn to by a police officer based on information supplied by one witness to the event and two persons claiming ownership of property found in defendants’ possession were filed, charging defendants with two counts of petit larceny and two counts of criminal possession of stolen property in the third degree. Defendants were arraigned that day and released on their own recognizance. The cases were adjourned until November 12 for defense motions and for the People to file supporting depositions. On November 12, the prosecutor had not obtained the requisite supporting depositions and the court dismissed the charges for “failure to prosecute”. The records were then ordered sealed pursuant to CPL 160.50.
PEOPLE V LOPEZ AND CORDOVA
Emilio Lopez and Julio Cordova were observed and arrested by a police officer while allegedly attempting to steal a motorcycle on March 18, 1981. Defendants were released on their own recognizance and ordered to appear *199 on April 14. On that date, defendants were arraigned and misdemeanor complaints, sworn to by a police officer, were filed, charging both defendants with attempted grand larceny in the third degree. An additional charge of possession of burglar tools was filed against Lopez. The cases were adjourned until May 11 and again until June 17 for defense motions. The court then ordered the prosecutor to provide a supporting deposition by June 2 or face dismissal of all charges on the June 17 adjourned date. When the deposition was not supplied by the prosecutor as ordered, the charges were dismissed for “failure to prosecute” and the records were ordered sealed.
PEOPLE V ACEVEDO
Gilberto Acevedo was arrested and charged by misdemeanor complaint, sworn to by a police officer based on defendant’s admissions, with endangering the welfare of a child and unlawful imprisonment in the second degree. The charges stemmed from an incident which occurred at 4:30 a.m. on September 10,1981, where defendant and two others allegedly tied an 11-year-old boy to a pillar at a local post office and then placed him in the trunk of an automobile and took him to a public park where they tied him to a see-saw. At defendant’s arraignment on September 11, the case was adjourned until October 7 and marked final for conversion. When the prosecutor was unable to produce the complainant on October 7, the court dismissed the charges for “failure to prosecute”.
In each of these cases, it is conceded that the statutory time period set forth in CPL 30.30, within which defendants must be brought to trial, had not elapsed. Nevertheless, Appellate Term affirmed the dismissals in the Douglass, Jones, Logan, Baldwin, St. Halaire, Lopez and Cordova cases “not on speedy trial grounds (CPL § 30.30) or ‘in furtherance of justice’ (CPL § 170.30, subd l[g]), but as unexceptionable exercises of discretion in the context of the court’s inherent authority to control its own processes and in the face of the prosecutor’s unsatisfactory explanation for his unpreparedness and failure to proceed [citations omitted].” Appellate Term also affirmed the dismissal in People v Acevedo, holding that “the court acted *200 within its authority and within its discretion”. The court cited People v Douglass as support for its decision.
Inasmuch as the courts below had no authority — inherent, statutory or otherwise — to dismiss the subject charges for “failure to prosecute” or for “calendar control”, the orders of the Appellate Term must be reversed.
We note at the outset, however, that trial courts are vested with substantial power to control their calendars and our opinion today should not be read as holding, for example, that a court is obligated to grant every adjournment requested by a prosecutor simply because statutory or constitutional time limitations have not expired. Indeed, to so hold would not only place unnecessary burdens on the defendant and his attorney who would have to make unnecessary appearances, but would also be wasteful of judicial resources and would contribute to calendar congestion at a time when the volume of matters legitimately on the court calendars threatens to impair the proper administration of criminal justice. A system of open or reserved dockets is an example of how cases of unwarranted delay in prosecution can be dealt with properly. The cases are marked off the active calendar, subject to the right of the prosecutor upon oral application to have a case restored after filing the document, the absence of which led to the case being placed on the reserve calendar, or in other situations, after becoming ready to proceed, and so informing the court and the defendant.
It appears that the dismissals ordered below may have been intended to be final, on the merits and with prejudice. They were ordered unconditionally with no provision allowing for renewal, and they were intended, at least in part, to help alleviate the courts’ calendar congestion. It would seem to make little sense to presume that although the courts dismissed the instant proceedings in an effort to clear their calendars, they nevertheless intended to allow new proceedings to be renewed on the same charges whenever the District Attorney chose to do so. We also note that in five of the cases, the court ordered the records sealed. Inasmuch as CPL 160.50 provides for the sealing of records when a criminal action has been terminated in favor of the accused, it appears that the courts below, in ordering the *201 records sealed in these cases, may have considered the subject proceedings to have been terminated in favor of the defendants. It is not necessary for present purposes, however, to decide, and we do not, whether the dismissals in these cases were intended to bar, or if allowed to stand would have had the effect of barring, reprosecution on the same charges. Whether these dismissals terminated all possible prosecution of the defendants on the underlying charges or only dismissed the present criminal proceedings with respect thereto is of no consequence for present purposes. The courts were without authority to do either.
Defendants’ central argument on these appeals is that trial courts have inherent power to control their calendars by dismissing misdemeanor complaints where the People have failed to prosecute the cases within a period of time deemed reasonable by the court. This argument is flawed for two reasons. First, courts at common law did not have inherent power to dismiss criminal charges for any reason; and, secondly, the Legislature has specifically addressed this issue in CPL 170.30 by setting forth, in an all inclusive manner, the grounds upon which a misdemeanor complaint may be dismissed; neither “failure to prosecute” nor “calendar control” is listed as a permissible ground.
An examination of the historical underpinnings of the courts’ power to dismiss criminal charges is necessary to deflate the myth that courts have inherent power to issue such orders under the guise of “failure to prosecute” merely to reduce a backlog of cases.[2]
At early common law, the dismissal of criminal proceedings before a verdict was reached was accomplished by entry of a nolle prosequi.[3] (See Commissioners’ Report on Code of Criminal Procedure [1850], ch VII, p 341.) The Attorney-General, however, was the only official who possessed this power. (People v McLeod, 25 Wend 483, 572.) Even the courts had no power to compel the entry of a nolle prosequi. (People v McLeod, supra, at pp 572-573.) This power was eventually delegated to District Attorneys who *202 represented the Attorney-General in nearly all criminal proceedings. However, fearing that the District Attorneys might abuse this power, the Legislature, in 1828, enacted a statute making it unlawful for a District Attorney to enter a nolle prosequi upon any indictment or in any way discontinue a criminal proceeding without leave of the court.[4] (People v McLeod, supra, at pp 572-573.)
It is interesting to note that it was the fear that too many criminal proceedings would be dismissed by District Attorneys without justification that prompted the Legislature, for the first time, to authorize the courts to intercede in this process. Accordingly, the courts were only granted a veto power against a prosecutor’s decision to discontinue a criminal proceeding, not a positive power to compel a discontinuance. (People v Bennett, 49 NY 137,141; People v McLeod, supra, at p 573; Commissioners’ Report on Code of Criminal Procedure [1850], ch VII, p 341.) This practice was carried through subsequent legislation without change. (See Rev Stat of NY [1830], part IV, ch II, tit IV, § 54; Rev Stat of NY [1845], part IV, ch II, tit IV, § 54; Rev Stat of NY [1852], part IV, ch II, tit IV, § 56; Rev Stat of NY [1858], part IV, ch II, tit IV, § 56; Rev Stat of NY [1875], part IV, ch II, tit IV, § 56.)
In 1850, the Commissioners on Practice and Pleading submitted to the Legislature an extensive report concerning an integrated Code of Criminal Procedure. In chapter VII of the report, captioned “Dismissal of the Action, Before or After Indictment, For Want of Prosecution, Or Otherwise”, the commissioners commented on the existing practice with respect to the courts’ inability to dismiss criminal proceedings for failure to prosecute. The commissioners opined that: “This chapter is intended to remedy, what the Commissioners deem defects in the existing practice, productive not only of great inconvenience, but of flagrant injustice. When a defendant is held to answer, or is indicted, there is now no mode of his compelling the prosecution to proceed to trial, or his being relieved from the *203 indictment, in the event of their failure to do so. Until the attorney-general sees fit to exercise his power to enter a nolle prosequi, or the district attorney to exert his more limited authority, of applying to the court for permission to do so, the indictment may be kept forever suspended over the head of the defendant. The only remedy he can obtain, after months, or even years, of inexcusable neglect to bring him to trial, is by an order of the court, discharging him either upon bail or upon his own recognizance.” (Commissioners’ Report on Code of Criminal Procedure [1850], ch VII, p 341 [emphasis supplied].) It should be abundantly clear, therefore, that there was never any inherent power vested in the courts to dismiss a criminal prosecution for “failure to prosecute”, whether it was to clear a court’s calendar or to protect a defendant from unnecessarily protracted prosecution. Indeed, it was not until 1850 that the first organized effort was made to obviate the injustice to defendants which resulted from a prosecutor’s refusal or inadvertent failure to bring a case to trial. In that year, the Commissioners on Practice and Pleading recommended that the Legislature enact statutes abolishing nolle prosequi and shifting the power to dismiss criminal proceedings from the Attorney-General to the courts. Their proposed enactments provided as follows:
“§ 739. The court may, either of its own motion, or upon the application of the district attorney, and in furtherance of justice, order an action, after indictment, to be dismissed; but in that case, the reasons of the dismissal must be set forth in the order which must be entered upon the minutes.
“§ 740. The entry of a nolle prosequi is abolished; and neither the attorney general, nor the district attorney, can discontinue or abandon a prosecution for a public offence, except as provided in the last section.”
It is important to note, however, that the commissioners’ proposals required that a dismissal ordered by the court on its own motion be “in furtherance of justice”.
Nevertheless, the commissioners’ recommendations were ignored by the Legislature until the enactment of the Code of Criminal Procedure in 1881. Section 671 of the original version of the code read as follows: “Court may *204 order indictment to be dismissed. — The court may, either of its own motion, or upon the application of the district attorney, and in furtherance of justice, order an action, after indictment, to be dismissed.”
' Section 672 provided that: “The entry of a nolle prosequi is abolished; and neither the attorney-general, nor the district attorney, can discontinue or abandon a prosecution for a crime, except as provided in the last section.” This is the first time that the courts of this State were given the power to dismiss a criminal proceeding on their own motion without the approval of either the Attorney-General or the District Attorney.
Consequently, it seems clear that the courts never had inherent power to dismiss, sua sponte, a criminal prosecution for any reason, be it “calendar control”, “failure to prosecute” or otherwise, until 1881, and that power was limited to situations where the court found such dismissal to be in furtherance of justice. The rule as set forth in section 671 of the Code of Criminal Procedure continued unchanged until the Legislature, in 1927, added the additional requirement that a court ordering a dismissal in furtherance of justice file, as a public record, a written statement of its reasons for dismissing.
When the Criminal Procedure Law was enacted in 1970, the Legislature, for the first time, chose to treat dismissals of indictments (CPL 210.20) separate from dismissals of misdemeanor complaints (CPL 170.30). CPL 170.30, which speaks directly to the issue raised on this appeal, provides seven grounds for dismissal of a misdemeanor complaint.[5] Nowhere in the statute is “failure to prosecute” or “calen *205 dar control” mentioned as a ground for dismissal. Hence, it follows that inasmuch as the courts did not possess inherent power to order dismissals of the complaints, nor acquired such authority from the Legislature, the accusatory instruments at issue in these appeals should not have been dismissed.[6]
This is all the more obvious when one recognizes that the CPL is an integrated and comprehensive system of laws which was carefully designed to “protect individual freedoms, to safeguard the public and to promote respect for law and the legal process.” (Governor’s Memorandum, McKinney’s Session Laws of NY, 1970, p 3140.) Thus, it is not for the trial courts to depart from the clear wording of CPL 170.30 and adopt, ipse dixit, a rule which empowers them to dismiss criminal proceedings on grounds, such as “failure to prosecute” and “calendar control”, which the Legislature never authorized. While we recognize that the New York City Criminal Court calendars are seriously overburdened, it is not for those courts to attempt to solve the problem by simply dismissing certain of those cases without any authorization for doing so. To condone such a practice would be to approve of a Judge-created rule which allows persons accused of criminal wrongdoing to be released in the unfettered discretion of the trial court simply because the court is overburdened with cases. This would not only be an abdication of the judiciary’s responsibility to safeguard the public and promote respect for the law, but would also create a situation whereby a trial court’s dismissal, rendered without consideration of any established guidelines, would be incapable of meaningful appellate review.
Moreover, we do not believe that there is a need to extend to the trial courts the power to dismiss criminal proceedings for “failure to prosecute” in order to protect defendants from unnecessarily protracted prosecution. Indeed, the Legislature has specifically addressed this problem by enacting provisions requiring dismissal of charges when the prosecution is untimely (CPL 170.30, subd 1, par *206 [d]; 30.10) or when the defendant has been denied the right to a speedy trial (CPL 170.30, subd 1, par [e]; 30.30). Defendants may also avail themselves of constitutional protections. (See Moore v Arizona, 414 US 25; People v Winfrey, 20 NY2d 138; see, also, People v Staley, 41 NY2d 789, 791.) Furthermore, if the court believes that dismissal is warranted in furtherance of justice, CPL 170.30 (subd 1, par [g]) and CPL 170.40 specifically authorize the court to so dismiss after considering the 10 factors set forth in the latter statute. In light of the comprehensive scheme established in the CPL for acting upon motions to dismiss and the extensive constitutional protections available, the dismissals ordered by the courts below were clearly unauthorized and unnecessary, notwithstanding the Trial Judges’ sincere belief of unwarranted delay in prosecution.
Defendants’ reliance on cases such as People v Wingard (33 NY2d 192), People v De Rosa (42 NY2d 872), People v Osgood (52 NY2d 37), People v Szychulda (57 NY2d 719) and People v Rickert (58 NY2d 122) is misplaced. All of these cases are readily distinguishable from the ones before us. The court in Wingard dismissed the complaint in the interests of justice pursuant to CPL 170.40. De Rosa held only that in the circumstances of that case, it was an abuse of discretion not to have granted the People a short trial adjournment. In Osgood, the issue raised was whether the time period immediately following a dismissal for failure to prosecute was properly chargeable to the People under CPL 30.30. Thus, the question of the propriety of that dismissal was never addressed by this court. The dismissal in Szychulda was statutorily authorized pursuant to CPL 240.70 (subd 1) as a sanction against the police department for failing to comply with a properly issued subpoena. Finally, that part oí Rickert which speaks of the court’s inherent power to dismiss in the interests of justice has nothing whatsoever to do with defendants’ claim here that the courts have inherent power to dismiss for “failure to prosecute” or in the interest of “calendar control”. In any event, in light of the fact that the Legislature has specifically authorized the courts to dismiss in furtherance of justice, that part of the opinion is merely dicta.
*207 For all of the above reasons, the orders of Appellate Term should be reversed, the complaints reinstated and the cases remitted for further proceedings.
Chief Judge Cooke and Judges Jones, Wachtler, Meyer, Simons and Kaye concur.
In People v Douglass, Jones, Logan, Baldwin, St. Halaire, Lopez and Cordova: Orders reversed, complaints reinstated and cases remitted to the Criminal Court of the City of New York, New York County, for further proceedings on the complaints.
In People v Acevedo: Order reversed, complaint reinstated and case remitted to the Criminal Court of the City of New York, New York County, for further proceedings on the complaint.

. An information may serve as a basis for both the commencement of a criminal action and for the prosecution thereof. (CPL 100.10, subd 1.) A misdemeanor complaint, however, may serve as a basis for the commencement of a criminal action, but cannot serve as a basis for prosecution unless the defendant waives prosecution by information. (CPL 100.10, subd 4.) A misdemeanor complaint can be converted to an information if it is supplemented by an appropriate supporting deposition. (CPL 170.65, subd 1.)

. For a similar discussion of the courts’ lack of inherent power to dismiss civil actions for failure to prosecute, see Cohn v Borchard Affiliations (25 NY2d 237,247-248).

. Nolle prosequi is commonly defined as “a formal entry on the record by the prosecuting officer by which he declares that he will not prosecute the case further.” (Black’s Law Dictionary [5th ed], p 945.)

. Section 54 (part IV, ch II, tit IV) of the Revised Statutes of New York (1829), provided in full that: “It shall not hereafter be lawful for any district attorney to enter a nolle prosequi upon any indictment, or in any other way to discontinue or abandon the same, without the leave of the court having jurisdiction to try the offence charged, entered in its minutes.”

. The statute provides as follows:
“1. After arraignment upon an information, a simplified information, a prosecutor’s information or a misdemeanor complaint, the local criminal court may, upon motion of the defendant, dismiss such instrument or any count thereof upon the ground that: “(a) It is defective, within the meaning of section 170.35; or
“(b) The defendant has received immunity from prosecution for the offense charged, pursuant to sections 50.20 or 190.40; or
“(c) The prosecution is barred by reason of a previous prosecution, pursuant to section 40.20; or
“(d) The prosecution is untimely, pursuant to section 30.10; or “(e) The defendant has been denied the right to a speedy trial; or “(f) There exists some other jurisdictional or legal impediment to conviction of the defendant for the offense charged; or
“(g) Dismissal is required in furtherance of justice, within the meaning of section 170.40.”

. It is noteworthy that in sharp contrast to the Legislature’s failure to authorize dismissals for failure to prosecute criminal actions is the specific grant of such power to the courts with respect to civil matters. (See CPLR 3216.)