OPINION OF THE COURT
Stanley Gartenstein, J.
At this juncture in the history of the New York City Criminal Court, there is scarce room for argument that the single-most important recent decision to impact on the criminal justice system has been People v Douglass (60 NY2d 194). In seven cases with similar procedural facts, all originating in the Criminal Court of New York County, the Court of Appeals held, in a single opinion, that dismissal of a pending criminal prosecution can only come about as a result of a limited number of grounds specifically codified in the Criminal Procedure Law. This decision underscored that dismissal as a sanction for the People’s failure to prosecute or, in the language of the Court of Appeals, a “calendar” dismissal, was reversible error unless the so-called *920 “speedy trial” time specified by CPL 30.30 (60 days for a class B misdemeanor; 90 days for a class A misdemeanor) had elapsed,[1] or the facts rose to an “interests of justice” standard under CPL 170.40 and 210.40.
At the very least, the application of Douglass (supra) has been vexing. A distinct perception of Bar and Bench exists to the effect that prosecutors too often rely upon it to forestall sanctions in situations where no pretense at being ready has been made. At the same time, defendants and their lawyers have been compelled to make their biweekly trek to the calendar parts, often losing a day’s earnings while waiting for their case to be called amidst some 200 other cases, a total which keeps mounting week by week.
To illustrate the impact of Douglass (supra) statistically: On November 1,1983, when it was decided by the Court of Appeals, official statistics show a backlog of pending cases in the New York County branch of the Criminal Court of 6,318. This figure rose to 7,822 as of the week of November 6; to 8,299 as of November 13. By February 5, 1984, the figure was above 9,000 (9,064); and, but two weeks later on February 19, stood at 10,056. On October 21, 1984, while the proceedings which concern us in this decision were awaiting final submissions, it had risen to 11,382.
SUGGESTED AND IMPLEMENTED SOLUTION:
Ironically, a dictum by the Douglass court specifically indicated that the Court of Appeals was sensitive to the staggering problems of calendar control and that it had no intention of emasculating trial courts with respect to their power of responding to prosecutorial delay or inaction. Because this dictum and its interpretation assume major importance not only in proceedings before us, but in the very functioning of the court itself, it is in order to quote it verbatim: “We note at the outset, however, *921 that trial courts are vested with substantial power to control their calendars and our opinion today should not be read as holding, for example, that a court is obligated to grant every adjournment requested by a prosecutor simply because statutory or constitutional time limitations have not expired. Indeed, to so hold would not only place unnecessary burdens on the defendant and his attorney who would have to make unnecessary appearances, but would also be wasteful of judicial resources and would contribute to calendar congestion at a time when the volume of matters legitimately on the court calendars threatens to impair the proper administration of criminal justice. A system of open or reserved dockets is an example of how cases of unwarranted delay in prosecution can be dealt with properly. The cases are marked off the active calendar, subject to the right of the prosecutor upon oral application to have a case restored after filing the document, the absence of which led to the case being placed on the reserve calendar, or in other situations, after becoming ready to proceed, and so informing the court and the defendant.” (People v Douglass, supra, p 200.)
Relying on this language, the Office of Court Administration has in fact sanctioned a system of Reserve Calendars for the Criminal Court of New York County. Its mechanics are not substantially different from those of other civil or criminal courts. When a case is not ready for any reason other than a legally sufficient one, it may be marked off the Active Calendar, adjourned to an unspecified date (AUD) in limbo until restored by the prosecution via a statement of readiness or by curing the original default; or, in the alternative, dismissed by the court upon defense motion after expiration of “30.30” (speedy trial) time.
THE INSTANT PROCEEDINGS."
(a) background:
On May 30, 1984, the People moved to restore a group of 57 cases which had been marked off the calendar by the Honorable Jay Gold, then presiding in Part AP3 in which the undersigned now presides. These cases had been marked off for a variety of reasons (failure of People to produce corroborating depositions of complainant as required by CPL 170.65; failure to produce lab reports in drug cases; failure to serve copies of police reports; failure to comply with disclosure orders, etc.). The minutes of that day indicate that three cases were called into the record. In each of these cases, none of which are at issue here, the People moved to restore by offering to furnish the specific document, the absence of which had first occasioned the “off” marking. *922 Judge Gold refused to restore these three cases unless and until the People were in a position either to announce their readiness for trial, or to furnish all documents upon which a meaningful dispositional conference might be held. Based upon these rulings, the People did not press applications to restore the other 54 cases so affected. The defense has moved to dismiss these cases upon speedy trial grounds. A number of these motions have been granted on consent of the People. The 12 cases which are contested fall into a special category which will be further elaborated in detail herein.[2]
(b) cplr article 78 proceeding:
In collateral related litigation, the People have commenced a proceeding pursuant to article 78 in the Supreme Court, New York County, for a writ of mandamus against Judge Gold directing him to discharge what is claimed, to be his ministerial duty of restoring the cases in question to the Active Calendar. This action entitled Matter of Morgenthau v Gold (126 Misc 2d 856) is pending as of this writing.[3] The undersigned, who is named in the caption of said proceeding as “The Judge of the Criminal Court of the City of New York, County of New York, presiding in All-Purpose Part 3,” was served as a party respondent therein. No stay was requested by the People nor was any issued. This article 78 proceeding involves.21 of the original 57 cases and includes the 12 cases now before us. Aside from a number of the original 57 cases which were dismissed on consent as heretofore set forth, other cases of this number were not made the subject of the Supreme Court proceeding because the People claim they could not obtain minutes thereof prior to the four-month period of limitations applicable under article 78, the inception of which the People claim, dated from Judge Gold’s refusal to restore on May 30, 1984.
(C) THE INSTANT MOTIONS:
Relying upon the fact that Special Term has not stayed proceedings in this court, the defense has filed motions for dismissal on speedy trial grounds in over 200 cases to date. The 12 motions which are the subject of this decision are the only ones being contested by the People because they apparently were among the 57 cases in question which the People claim *923 Judge Gold refused to restore. As alternate grounds, the defense also urges dismissal in the interests of justice pursuant to CPL 170.40.
(d) discussion:
It is beyond dispute that the applicable time specified in CPL 30.30 has expired in each of these 12 cases. Once this situation is shown to exist, it is the People’s burden to establish any periods of time they claim to be excludable (People v Berkowitz, 50 NY2d 333). It is the People’s contention that as of the time Judge Gold denied their applications to restore on May 30, he effectively foreclosed them from any further remedy and, accordingly, “30.30 time” was tolled as of that date. Supplementing this claim the People submit that the article 78 proceeding now pending which is addressed to this refusal is a related proceeding under CPL 30.30 (4) (a) and hence excluded. This statute reads, in relevant part:
“4. In computing the time within which the people must be ready for trial pursuant to subdivisions one and two, the following periods must be excluded:
“(a) a reasonable period of delay resulting from other proceedings concerning the defendant, including but not limited to: proceedings for the determination of competency and the period during which defendant is incompetent to stand trial; demand to produce; request for a bill of particulars; pre-trial motions; appeals; trial of other charges; and the period during which such matters are under consideration by the court; or” (CPL 30.30 [4] [a]).
In order to toll the running of “30.30 time,” the People must communicate their readiness for trial to the court on record (cf. People v Hamilton, 46 NY2d 932). This obligation is not excused when a case is placed on a Ready-Reserve Calendar (People v Brothers, 50 NY2d 413). Nor has this burden been met when the court, exercising its mandate to inquire into a statement of readiness, finds that the People have failed to substantiate it (People v Giordano, 56 NY2d 524; People v Dean, 45 NY2d 651; People v Brothers, supra; People v Hamilton, supra). As a matter of law, the People are required to attend every term of this court and they have always had access to it for the purpose of communicating readiness for trial. An argument which claims in substance that such timidity pervaded their ranks that not a single assistant could brave the terrors of appearing for this purpose before Judge Gold must be received with at least some skepticism in view of the transcript of proceedings on the date in *924 question which clearly indicates that the refusal to restore was without' prejudice.[4]
When a judge marks a case off calendar because of the People’s failure to communicate readiness or produce necessary documents required by law, he is in effect assessing prosecutorial merit and acting upon instincts developed over many years which lead him to the conclusion that, as expressed in the everyday slang of prosecutors and defense counsel, this particular case is “going nowhere”. Substantiating this basic truism statistically, in the period immediately prior to issuance of this decision, the undersigned, presiding in this same Part AP3 having before him similar motions to dismiss relating to other cases theretofore marked “off”, did in fact dismiss 208 consecutive cases from the Reserve Calendar upon defense motions all of which were granted without the People’s opposition. These unopposed motions did not differ substantially with regard to their underlying procedural facts from the 12 motions before us in which the People concede that their sole reason for opposition is “vindication of principle.”
In opposing these motions, the People contend that Judge Gold’s specific ground for marking each of these cases off calendar in the first instance should in effect be construed as an implied quasi contract between People and court that when this specific default (and no other) was cured, the People would have an inalienable right to restore to the Active Calendar. This claim is legally defective. The court has a continuing duty to inquire into the People’s statement of readiness, indeed, a positive obligation not to be bound by such statement at face value only, but to make meaningful inquiry beyond it. (People v Hamilton, supra; People v Giordano, supra; People v Dean, supra; People v Colon, 59 NY2d 921; People v Johnson, NYLJ, Mar. 30, 1984, p 12, col 4; People v Bonterre, 87 Misc 2d 243.) Even were we to accept this novel quasi contract theory, if the People’s reasoning were taken to its ultimate, the court could *925 simply have restored the cases in question and immediately marked them off again until the materials required for meaningful proceedings and not produced were in fact produced and served.
rulings:
(a) The record of proceedings before Judge Gold on May 30, 1984 fails to establish any refusal to recalendar any of the cases now before us. Thus the People’s claim that “30.30 time” was tolled as of the purported date of refusal is simply incorrect factually;
(b) Assuming, arguendo, a liberal construction of the colloquy of May 30, such as would in fact make out a refusal, the record clearly indicates that same was without prejudice to immediate reapplication at any time the People were prepared to establish their readiness. Again, this availability of the record for the People to announce their readiness factually negates the People’s assertion that they were effectively deprived of a forum for that purpose;
(c) That a pending article 78 proceeding to “vindicate principle” is not such a related proceeding as might toll “30.30 time” within the meaning of CPL 30.30 (4) (a), in that it is an institutional dispute between prosecutor and court concerning their relative prerogatives totally unrelated to the specific prosecutions at bar;
(d) That even were said proceeding held to fall within CPL 30.30 (4) (a), and hence excludable, the People’s inordinate delay in obtaining minutes of the cases so affected far exceeded any reasonable time allowable by law for that purpose (People v Wallace, 100 AD2d 634; People v Bonterre, 87 Misc 2d 243, supra);
(e) That as the People themselves concede on record, an excuse for delay in bringing an article 78 proceeding because they were “waiting for minutes” (thus, it is claimed, further excluding all time up to the very moment ,the article 78 proceeding was commenced at the very end of the allowable four-month period of limitations) is untenable since it is legally unnecessary to produce minutes in order to commence a proceeding thereunder.[5]
The People’s opposition to these motions on “speedy trial” grounds is untenable. Prior to granting same, the court turns *926 first to consideration of the alternate grounds for dismissal in the interests of justice as urged by the defense.
ALTERNATE GROUNDS — DISMISSAL IN INTERESTS
OF justice:
Prior to discussion of these issues it should be pointed out that a significant proportion of appellate stare decisis in the field of calendar control appears to classify a calendar dismissal for failure to prosecute as a dismissal in the interests of justice (cf. People v Wingard, 33 NY2d 192; People v Kwok Ming Chan, 45 AD2d 613; People v Kitt, 93 AD2d 77). The common standard which runs through these cases considered on an appellate level as being decided on an “interests of justice” basis is in fact the same standard for dismissal which, articulated or otherwise, is in the mind of the average judge in dismissing for failure to prosecute. People v Wingard (33 NY2d 192, supra) may be regarded as the leading case on calendar control couched in “interests of justice” language. In this prosecution, 10 young people were charged with disorderly conduct. The prosecutor (in this instance the Corporation Counsel) phoned the court in advance to request that he “ ‘get out earl[y]’ ” (p 194). The court in fact convened at 9:30 a.m. All defendants and counsel were present. The prosecutor and witnesses failed to appear. The court directed that the prosecutor be phoned to inquire into his absence, and at 10:15 a.m. ordered a short recess. After reconvening an hour later, the Judge noted that the prosecutor had still not arrived; directed another call to him; and again declared a recess. Upon reconvening after 11:30 a.m. the court ordered these cases called, and upon nonappearance of the prosecutor or his witnesses, dismissed “in the interests of justice,” making an appropriate record as to his reasons. This dismissal was ultimately affirmed by the Court of Appeals.
What appears to stand out about Wingard (supra) is that, with slight procedural variations, it represents a class of cases so often before our trial courts where a prosecutor is not ready or chooses to delay for some reason known only to him, usually where he is having trouble producing witnesses; or because a case has received a low office priority; or because of any number of reasons which may be lumped together as “office failure.” Interestingly, returning to the constellation of Douglass cases {supra), for a fascinating footnote, an assessment of the circumstances as to all seven prosecutions yields the conclusion that they were each “going nowhere”, a reality first perceived by the court in the earliest stages of prosecution but denied by the prosecutor. In point of fact, upon remittitur from the Court of *927 Appeals, not 1 of the 7 Douglass cases (supra) resulted in conviction of any crime.[6] The point of departure therefore was disagreement between court and prosecutor as to when this basic reality of life was to be recognized in the context of an overburdened court. It is respectfully submitted that comparison between Wingard and Douglass will substantiate the conclusion that had the Judges in the Douglass cases simply articulated in detail their reasons for dismissal, as did the court in Wingard, reasons which have been validated in retrospect by the ultimate results, and then dismissed in the interests of justice, the result in the Court of Appeals would probably have been different. (See also, People v Kwok Ming Chan, 45 AD2d 613, supra, articulating principle but requiring evidentiary hearing; People v Fagg, 86 Misc 2d 1046.)
In People v Fagg (supra, at p 1047), a dismissal in the interests of justice for failure of the District Attorney to appear on an adjourned date, was affirmed on appeal with the court quoting the following language: “ ‘Discretion may be exercised to dismiss a case if the dismissal is in the interest of justice because of “some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant upon such indictment or count would constitute or result in injustice.” An example of a dismissal in the interests of justice is when a court dismisses for failure of the district attorney in timely prosecuting a charge, although that failure does not amount to a denial of a speedy trial.’ (Pitier, New York Criminal Practice, under the CPL, p 403, citing CPL 210.40, subd 1; People v Weiss, 61 NYS2d 229.)” (Emphasis added; see also, People v Kitt, 93 AD2d 77, 78, supra, which approved concept of dismissal in interests of justice for People’s failure to proceed but reversed on the specific facts therein.)
Dismissal for the People’s failure to abide by court mandates has likewise been upheld by the Court of Appeals in People v Szychulda (57 NY2d 719, 720, citing People v Wingard, supra), even where the mandate was forthcoming upon faulty underlying procedure (in this instance a “so ordered” subpoena for a police officer’s personnel records when the statute [Civil Rights Law § 50-a] mandated a different procedure).
Both Wingard and Szychulda (supra) were distinguished by the Court of Appeals in Douglass (supra); Wingard on the basis of its having been decided “in the interests of justice” (People v *928 Douglass, supra, p 206) and Szychulda on the basis that this sanction was specifically authorized by statute (CPL 240.70 [1]). This again appears to justify the inference that had the Judges in Douglass simply articulated their underlying reasons which did in fact reach an “interests of justice” (CPL 170.40) level, the results might have been different.
Finally, it is appropriate to consider People v Rickert (58 NY2d 122), also distinguished by Douglass (supra), on the basis of its having been decided in the interests of justice as opposed to a blanket claim of inherent power of dismissal for calendar control purposes. In Rickert the Court of Appeals was careful to point out that a court’s ritual adherence to the “interests of justice” formula enacted in the amended CPL 170.40 and 210.40, in substance a codification of People v Clayton (41 AD2d 204), was unnecessary; that courts are free to give any element of the amended statute greater — even controlling — weight over any other factors. The Rickert court pointed out that: “Belatedly, it is to be remembered that one of the reforms effected through the years in the procedure to dismiss accusatory instruments in the interest of justice was to remove the power to do so from the offices of the District Attorney and Attorney-General and lodge it, instead, in the courts alone (Matter of McDonald v Sobel, 272 App Div 455, 461, affd 297 NY 679; People v Quill, 11 Misc 2d 512, 513, supra).” (People v Rickert, 58 NY2d 122, 131-132, supra.)
Bearing these perspectives in mind and considering the elements of a dismissal in the interests of justice (CPL 170.40) the court concludes:
(a) That the People are persisting in the prosecution of these cases solely for the . vindication of principle as opposed to each case’s individual merits, a policy specifically disapproved by the Court of Appeals (cf. People v Rickert, supra, p 132);
(b) That the People’s failure to comply with the court’s mandate of May 30,1984, a failure which borders on refusal — even contempt — (cf. Matter of Balter v Regan, 63 NY2d 630) properly warrants sanctions;
(c) That dismissal is the proper sanction in view of the People’s lack of interest (other than “vindication of principle”) in prosecuting to an extent where the court may properly conclude an abandonment (cf. People v Wingard, 33 NY2d 192, supra);
(d) That these charges are all misdemeanors (in four instances class B misdemeanors). Therefore, “consistent with common sense, ‘the less serious nature of the criminal conduct affected by the procedure governed by * * * section [170.40], should make *929 the more particularized and reviewable exercise of interest-of-justice discretion even more available here than in the felony-governing section 210.40’.” (People v Rickert, supra, p 132);
(e) In terms of the impact of dismissal on public confidence in the criminal justice system, that the scarce resources available to the District Attorney’s office and the court are best utilized by continued prosecution of cases with demonstrable prosecutorial merit as opposed to cases prosecuted for “vindication of principle;” that the taxpayers of this county, presumably interested in dollar for dollar value of their tax money would gain confidence in a system which flags cases having no prosecutorial merit early, toward the end of expending taxpayer dollars with maximum productivity.[7]
We have also examined the other factors set forth in CPL 170.40 to the extent applicable and conclude that these proceedings, lacking demonstrable prosecutorial merit, should be dismissed in the interests of justice.
The several motions to dismiss are granted both on speedy trial grounds and in the interests of justice.

. It is possible to perceive a hint from the Court of Appeals to the effect that its main concern in holding as it did was the fact that the local Criminal Court appeared to foreclose reprosecution by ordering a number of the dockets in question sealed (People v Douglass, supra, p 200). The question of whether or not a calendar dismissal bars reprosecution appears to have been touched upon on the nisi prius level (cf. People v Bell, 95 Misc 2d 360; People v Nizza, 92 Misc 2d 823; People v Morning, 102 Misc 2d 750; People v Chandler, 111 Misc 2d 654). The fascinating question of whether the Court of Appeals was assuming that this bar existed as a matter of law appears to have been rendered academic by the holding in Douglass condemning calendar dismissals. If in fact a calendar dismissal may be equated, under proper circumstances, with a dismissal in the interests of justice as shall be discussed herein, such dismissal would of necessity be a final disposition and appealable as such, thus remedying the Court of Appeals critique.

. The People have withdrawn opposition to the motion in People v Harris, leaving 11 cases in issue. To avoid confusion, this decision will refer to this number at its original figure of 12.

. Subsequent to the original issuance of this decision and prior to its official publication, this proceeding was dismissed on its merits and the application denied. (Cf. Matter of Morgenthau v Gold, 126 Misc 2d 856.)

. Judge Gold’s exact remarks as quoted from the official minutes were as follows:
“The Court: Again, let me say, so the record is clear, I believe that I should have a meaningful dispositional conference in all of these cases and I don’t believe it’s possible without the documents underlying the case, namely police reports and lab reports, and I believe that’s a reasonable request. Indeed, in some jurisdictions, they append those documents to the accusatory instrument at the arraignment.
“Now, I’m not looking to cause your office any unreasonable inconvenience, but I’m asking you to gather together, in all of these cases, the few papers that belong to them so that I can have a conference with yourself and your adversary concerning disposition.”

. The People claim however that they needed the minutes to verify what took place before Judge Gold. This position is unsound as a simple affidavit by the assistant who was then representing the People summarizing the proceedings would have sufficed legally.

. Indeed, only 1 of the 7 defendants, Julio Cordova (docket No. 1N020209) pleaded guilty to the charge- of disorderly conduct (Penal Law § 240.20), a violation, and received a sentence of an unconditional discharge.

. The position of the Association of the Bar of the City of New York on this issue agrees with this rationale. It has been reported on page 1 of the New York Law Journal of October 26, 1984. This report reads in relevant part:
“the Committee described as inaccurate and unfair the criticism of * * * [J]udge [Gold] for ‘killing prosecution’ and ‘unlawfully preventing’ prosecutions * * *
“Messrs. [Robert B.] McKay and [Irwin] Rothman, in defending the reserve-calendar format, said it was necessary when ‘judges have to deal with calendars of 100-200 cases on a daily basis * * * thus leaving the judge more time to deal carefully with cases that are ready.’ * * *
“ ‘The removal of these cases from the active calendar should reduce the enormous number of cases repeatedly adjourned without any action taken. The time spent simply adjourning these cases wastes too much of the court’s time, and the time of all the parties to the proceedings.’ ”