In the Matter of ROBERT M. MORGENTHAU, as District Attorney of New York County, Appellant, v JAY GOLD, as Judge of the Criminal Court of the City of New York, et al., Respondents, and LEGAL AID SOCIETY, Intervenor-Respondent.

First Department, June 5, 1986

## APPEARANCES OF COUNSEL

*Arthur G. Weinstein* of counsel *(Robert M. Pitler, Amyjane Rettew* and *Susan Corkery* with him on the brief), for appellant.

*Robert Kasanof (Barry Bohrer* with him on the brief), for Jay Gold, respondent.

*Jane Levine* of counsel *(O. Peter Sherwood* with her on the brief; *Robert Abrams, Attorney-General,* attorney), for Judge of the Criminal Court of the City of New York, New York County, Presiding in All-Purpose Part 3, respondent.

*Steven Asin* of counsel *(Ivar Goldart* and *Michele Maxian* with him on the brief; *Caesar Cirigliano,* attorney), for Kim Romano, and others, respondents, and for intervenor-respondent.

## OPINION OF THE COURT

MURPHY, P. J.

Petitioner Robert M. Morgenthau, District Attorney of New York County, appeals herein from a judgment of the Supreme Court, New York County, dismissing a petition for a judgment pursuant to CPLR article 78 (126 Misc 2d 856). The petitioner sought a writ of mandamus compelling Criminal Court Judge Jay Gold to restore certain criminal cases to the Active Calendar.

This court must now determine the practical effect to be given in this case to the Court of Appeals holding in *People v Douglass* (60 NY2d 194 [1983]). Specifically, the court must consider the weight and effect to be given the following language in *Douglass:* "A system of open or reserved dockets is an example of how cases of unwarranted delay in prosecution can be dealt with properly. The cases are marked off the active calendar, *subject to the right of the prosecutor upon oral application* to have a case restored after filing the document, the absence of which led to the case being placed on the

reserve calendar, or in other situations, after becoming ready to proceed, and so informing the court and the defendant." *(Supra,* p 200; emphasis added.) We find that by this language the Court of Appeals specifically gave the District Attorney the unqualified right, under the circumstances described herein, to have the 15 cases here at issue restored to the Trial Calendar. Indeed, any other conclusion not only renders the "right" described in *People v Douglass* meaningless, but is contrary to the meaning and purpose of that case.

The facts of the instant case are as follows: In late April and early May of 1984, while sitting as a Judge in AP-3 of the Criminal Court of the City of New York, County of New York, Judge Jay Gold began placing a number of criminal cases on a Reserve Calendar. This procedure was implemented following the decision in *Douglass (supra).*

The majority of the cases involved in this action were suspended on the first adjourned date following arraignment and all were marked off the Active Calendar for a specific reason. Five prostitution cases, *People v Thomas, People v Romano, People v Griffin, People v Jones,* and *People v Davis* were placed on the Reserve Calendar, because the People had not answered ready for trial on the first adjourned date following the arraignment date. Judge Gold placed a theft of services case, *People v McMillan,* on the Reserve Calendar because the People had not yet filed a supporting deposition. *People v Carter,* an assault case, was stricken from the Active Calendar because the People had not answered ready. Seven drug prosecutions were marked off the Active Calendar by Judge Gold because the People had not received laboratory reports from the police chemists: *People v Perez, People v Ortiz, People v Okranski, People v Moody, People v Feliciano, People v Castelli* and *People v Faust.* Finally, Judge Gold placed *People v Lawell,* a narcotics case, on the Reserve Calendar because no supporting deposition had been filed on the initial adjourned date.

The People thereafter attempted to restore a number of cases to the Active Calendar, including the 15 that are the subject of this appeal. Specifically, the People informed Judge Gold that they now had the document whose absence had led him to place the case on the Reserve Calendar, or that they were prepared to answer ready. Citing *Douglass (supra),* the People maintained that Judge Gold was obligated to restore these prosecutions.

Instead, Judge Gold refused and imposed additional obligations which had to be fulfilled before he would entertain a further motion to restore. Specifically, he demanded that the People procure all the police reports filed in these cases. Maintaining that the People could not answer "ready" until these police reports were received, Judge Gold decided that restoring these cases to the Active Calendar would serve no "useful purpose" until then.

Petitioner then commenced this article 78 proceeding. Citing *People v Douglass (supra)* petitioner alleged that Judge Gold had a ministerial duty to restore these cases to the Active Calendar and that his refusal to do so violated a clear legal right of petitioner.

In opposition, Judge Gold maintained that he had discretionary power to continue a case on the Reserve Calendar once he discovered that the case was not ready for reasons other than the original ones. In addition, it was argued that a writ of mandamus was inappropriate, because petitioner lacked a "clear legal right" since he relied not on a statute, but on language of a court decision, which was dicta only, and which required, at most, only that the court entertain the application to restore the case.

Special Term denied petitioner's application for a writ of mandamus and granted the cross motions to dismiss. The court concluded that *People v Douglass* (60 NY2d 194, *supra)* did not impose a ministerial duty to restore the cases upon motion of the People. While the court remarked (126 Misc 2d, at p 859) that Judge Gold's imposition of "belated conditions" to restoration was both inefficient and "frustrat[ing]" to the prosecution, it decided that mandamus was unwarranted, since Judge Gold had not entirely foreclosed petitioner's access to the courts. Significantly, even before the court's decision had been issued, 11 of the 15 cases involved here had been dismissed on both interests of justice and speedy trial grounds.

We believe that Special Term erred in holding that the cited language in *Douglass (supra)* was mere *dicta* which, in effect, gave the prosecutor *not* "the right * * * to have the case restored" to the Active Calendar, but merely the "right" to apply for such restoration, subject to the discretion of the trial court. A reading of *Douglass* makes clear that the language now at issue was intended to serve not as a hypothetical suggestion regarding calendar control, but as a specific mecha-

nism absolutely vital if the Court of Appeals decision is to be given any practical effect at all.

*Douglass (supra)* dealt, meticulously and at length, with a trial court's authority to dismiss misdemeanor charges because of "failure to prosecute". In its opinion, the Court of Appeals made clear that trial courts have no inherent powers to dismiss charges where the People have merely failed to prosecute "within a period of time deemed reasonable by the court" *(supra,* p 201); rather, dismissal of misdemeanor complaints is governed solely by the provisions of CPL 170.30, which specifies seven grounds for such dismissal. One such statutory ground, the denial of a "right to speedy trial", is set forth in CPL 170.30 (1) (e).

*Douglass (supra)* was not written in a vacuum. The Court of Appeals recognized the crushing case load under which the New York City Criminal Court must operate, a load so overwhelming that an estimated 99% of all cases before the Criminal Court must be disposed of by entry of a plea or otherwise, without trial. The time and expense that would be consumed by the trial of more than 1% of such cases cannot even be contemplated, given the limited resources of the present system.

The 250,000 cases dealt with annually by the city's Criminal Court involve such charges as assault, street-level drug dealing, shoplifting, pickpocketing and weapons offenses. And, as a recent study by the New York State Law Enforcement Council found, although 107 Judges are authorized to sit in the Criminal Court, only 67 are currently assigned to that court. Obviously, a workload of one quarter of a million new cases annually imposes an intolerable burden on these Judges; to note that the system borders on collapse is only to state the obvious.

The extraordinary pressures on the resources of the Criminal Court has led some Judges to resort to expedient, but improper methods of disposing of certain cases. The authority of a Trial Judge to use his discretion in matters of calendar control is not challenged, in the instant case, by the District Attorney, nor is it questioned by this court. The problem sought to be addressed here is the precise problem articulated by the court in *Douglass (supra,* at p 205): "While we recognize that the New York City Criminal Court calendars are seriously overburdened it is not for those courts to attempt to solve the problem by simply dismissing certain of those cases

without any authorization for doing so. To condone such a practice would be to approve of a Judge-created rule which allows persons accused of criminal wrongdoing to be released in the unfettered discretion of the trial court simply because the court is overburdened with cases. This would not only be an abdication of the judiciary's responsibility to safeguard the public and promote respect for the law, but would also create a situation whereby a trial court's dismissal, rendered without consideration of any established guidelines, would be incapable of meaningful appellate review."

Thus, the court in *Douglass,* while recognizing the strain on the resources of the criminal court system, emphasized the overwhelming importance of the court's responsibility to effect a meaningful disposition of cases where persons are charged with criminal conduct. The *Douglass* court reaffirmed the principle that, absent precise statutory authorization, a court has no "inherent power" to dismiss a case of "failure to prosecute" *(supra,* p 205).

Instead, to aid in efficient calendar control, the court, in language which is now the subject of this appeal, authorized a system of open or reserved dockets whereby a case not ready for trial may be marked off the Active Calendar, "subject to the right of the prosecutor upon oral application to have a case restored" after he had fulfilled the condition which had put the case on the Reserve Calendar *(supra,* p 200).

It can be seen that the court's authorization of the District Attorney's "right" to have the case restored to the Active Calendar is offered not as a random, hypothetical suggestion to aid in calendar control but as a definite, specific mechanism without which the abuse described in *Douglass* could not be remedied. Otherwise, if a Trial Judge is given total discretion to maintain a case on the Reserve Calendar, he may simply so maintain it until the "speedy trial" provision of CPL 170.30 (1) (e) has run, and the case must legally be dismissed. This may result, again, in the wholesale dismissal of misdemeanor cases without regard to their merits and for purposes of calendar control only.

That *Douglass (supra)* considered—and spoke to—this possibility is illustrated by the history of that case. As first drafted, the opinion in that case merely allowed the District Attorney "to apply for leave to restore" a case placed on the Reserve Calendar. *(See,* slip opn in *People v Douglass,* p 6.) The District Attorney then moved the court to amend that language to

avoid the very problem now at issue here. Though the court denied the District Attorney's motion, it did in fact amend the decision, deleting the phrase "to apply for leave to restore" to specifically allow the District Attorney "the right * * * to have a case restored" *(supra,* p 200). The court below, in the instant case, would so construe that "right" so as to constitute no "right" at all.

It is conceded that, in the 15 cases at issue here, the People had fulfilled the conditions that had led to those cases being marked off the Active Calendar. The trial court's denial of the People's motion to restore those cases to the Active Calendar, and its imposition of new conditions on the People, resulted in the dismissal of many of those 15 cases on speedy trial grounds. To ignore the clear import of *Douglass (supra),* and allow the trial court the unchecked discretion practiced here, is to confuse efficient calendar control with the wholesale dismissal of meritorious cases, to cripple the People in their good-faith prosecution of those cases, and, ultimately, to announce the abandonment of what must be a primary goal of any civilized society: the deterrence and control of criminal conduct. The purpose of the court system, and of court personnel, is to serve the community; to exalt expediency over substance is to violate that purpose.

In light of these circumstances, the District Attorney's article 78 petition was properly brought. Absent mandamus, the People could not have appealed the orders at issue here, since CPL 450.20 bars appeals from nonfinal orders. A writ of mandamus may, however, as here, be brought to compel a judicial officer to perform a duty imposed by common law. *(Matter of Steinway,* 159 NY 250 [1899].) Mandamus will lie where the trial court is charged with "an unlawful use or abuse of the entire action or proceeding as distinguished from an unlawful procedure or error in the action or proceeding itself related to the proper purpose of the action or proceeding." *(Matter of State of New York v King,* 36 NY2d 59 [1975].) Here, the People complain of what is in fact nothing less than the wholesale dismissal of meritorious cases without regard to the merit of those cases and without allowing the People an opportunity to be heard. Certainly this constitutes an unlawful "use or abuse" of the court's powers. This mandamus proceeding was thus properly brought to compel the court to perform the clear ministerial and nondiscretionary duty imposed on it by *People v Douglass:* that is, upon the People's

motion and following compliance with the court's stated condition, to restore the cases at issue to the Trial Calendar.

Accordingly, the judgment of the Supreme Court, New York County (Wallach, J.), entered February 13, 1985, should be reversed, on the law, and the petition granted, without costs.

MILONAS, J. (dissenting). Petitioner, the District Attorney of New York County, appeals from a judgment of the Supreme Court, New York County (Richard W. Wallach, J.), which dismissed an application pursuant to CPLR article 78 seeking to compel respondent, the Honorable Jay Gold, a Judge of the Criminal Court of the City of New York, to restore certain criminal matters to the Active Calendar. It is petitioner's contention that the decision by the Court of Appeals in *People v Douglass* (60 NY2d 194) mandates that the court reactivate those prosecutions to which the People answer ready regardless of whether or not the District Attorney is, in fact, prepared for a dispositional conference or to proceed to trial. Respondent had refused petitioner's request to move the cases in question from the Reserve to the Active Calendar on the ground that despite answering ready, the District Attorney was not actually in a position to take any action, which required court attention, in connection with these cases. According to respondent, certain essential police reports and other documents were still lacking. Instead of simply preparing the outstanding material, however, petitioner commenced the instant proceeding.

At the outset, it should be stated that mandamus is an extraordinary remedy which is available to compel the performance of a purely ministerial act only where there is a clear legal right to the relief sought. *(Klostermann v Cuomo,* 61 NY2d 525; *Matter of Legal Aid Socy. v Scheinman,* 53 NY2d 12.)* An article 78 proceeding is not appropriate to review an error alleged to have occurred in a criminal action. *(Matter of Hennessy v Gorman,* 58 NY2d 806; *Matter of Mulvaney v Dubin,* 55 NY2d 668.)* Nor can it be utilized as a means to compel the court in a criminal matter to render a determination on the merits of a defendant's timely filed motion. *(Matter of Veloz v Rothwax,* 65 NY2d 902.)* Moreover, while mandamus may be resorted to where a public official fails to perform a duty imposed upon him or her by law, CPLR 105 (o) defines the word "law" as "any statute or any civil practice rule." Yet, petitioner appears to urge that a court may be required by means of mandamus to perform duties imposed not only by

statute but by common law and, in this instance, not even by clear mandatory common law. Rather, petitioner would elevate mere dictum contained in *People v Douglass (supra)* to the status of duty enjoined upon by law. None of the authority cited by petitioner supports the use of mandamus to achieve such a result.

In *People v Douglass (supra)*, the Court of Appeals held that Judges do not possess inherent power to dismiss *sua sponte* a criminal prosecution for any reason, whether for failure to prosecute or calendar control, except as authorized by statutory or constitutional speedy trial rules. The court, in its opinion, noted (p 200): "that trial courts are vested with substantial power to control their calendars and our opinion today should not be read as holding, for example, that a court is obligated to grant every adjournment requested by a prosecutor simply because statutory or constitutional time limitations have not expired. Indeed, to so hold would not only place unnecessary burdens on the defendant and his attorney who would have to make unnecessary appearances, but would also be wasteful of judicial resources and would contribute to calendar congestion at a time when the volume of matters legitimately on the court calendars threatens to impair the proper administration of criminal justice. A system of open or reserved dockets is an example of how cases of unwarranted delay in prosecution can be dealt with properly. The cases are marked off the active calendar, subject to the right of the prosecutor upon oral application to have a case restored after filing the document, the absence of which led to the case being placed on the reserve calendar, or in other situations, after becoming ready to proceed, and so informing the court and the defendant."

Petitioner asserts, and the majority agree, that the foregoing language establishes the prosecutor's right to have cases placed on the Active Calendar once the original reason for removal no longer exists. Therefore, it is urged, upon request of the People, the court must restore those cases, and the act of doing so is a simple ministerial function. Petitioner largely rests its argument on the fact that in the initial draft of its opinion in *People v Douglass (supra)*, the Court of Appeals permitted the District Attorney "to apply for leave to restore" a case which had been put on the Reserve Calendar, which phrase was removed from the official version. Although the court had denied the People's motion to amend its opinion by deleting the aforementioned words, it *sua sponte* effected the

change as indicated. Based upon such a slender thread, petitioner would transform mere dictum into a legally binding precedent, and this notwithstanding the long tradition supporting the inherent power of a trial court to control its own calendar. Indeed, in *People v Douglass (supra),* the Court of Appeals made reference to this "substantial" authority (p 200; *see also, Cohn v Borchard Affiliations,* 25 NY2d 237, 249-250).

The decision in *People v Douglass* (60 NY2d 194, *supra)* in no way limits the historical power which a trial court has over the management of its own calendar. While expressly recognizing the power of a trial court to control its calendars, including the right to implement a Reserve Calendar system, the Court of Appeals determined that this power does not give the trial court the authority to *sua sponte* dismiss the cases with which the prosecutor is not prepared to proceed. In that regard, the ruling in *People v Douglass (supra)* involved a thorough analysis of the legislative background surrounding dismissals of criminal actions. Yet, petitioner would go far beyond the actual holding of the Court of Appeals in order to strip Trial Judges of the discretion to maintain cases on the Reserve Calendar even where, in their estimation, the People are not ready to proceed with these matters. Petitioner, moreover, does not contend that respondent did not have the authority to assign the cases at issue herein to the Reserve Calendar. He does not claim that respondent had no right to direct his office to take particular steps to prepare the cases for trial. In fact, his only complaint is that pursuant to *People v Douglass (supra),* respondent was obliged to restore these matters to the Active Calendar upon request of the prosecutor even though they were not actually adequately ready for trial.

Under the scenario devised by petitioner, respondent was mandated first to restore the cases to the Active Calendar. Thereafter, he would have to order the District Attorney to take additional measures to ready each case for trial and grant adjournments in order to enable the People to complete their preparations. However, if the prosecution created unwarranted delay in doing so, then and only then respondent could presumably remove the cases from the Active Calendar and put them back on the Reserve Calendar. The difficulty with such a sequence of events, is, of course, that it not only would be unduly wasteful of the time and resources of both the court and the defense, but it could result in the prosecutor's having effective control over the court's calendar. Accordingly, the District Attorney would now be in a position to compel the

placement of criminal matters on the Active Calendar even where these cases are not nearly ready for a dispositional conference or trial. Thus, the primary purpose of maintaining an Active and Reserve Calendar system would be undermined, a situation clearly not sanctioned or proposed by the Court of Appeals in *People v Douglass (supra)*.

Any reasonable evaluation of petitioner's claims in the instant appeal reveals that his real quarrel with respondent is that the latter is too quick to place a case on the Reserve Calendar and too slow to restore such matter to the Active Calendar. However, that is a product of the manner in which a particular Trial Judge exercises his discretion, not of his right to exercise it. Further, the fact that certain cases have been removed to the Reserve Calendar does not preclude the People from taking any action which they deem appropriate with regard to those matters. The District Attorney is in no way prohibited from making any applications, statements or arguments in open court and on the record—for instance, demonstrating and announcing readiness. In short, the capacity of the People to proceed with their prosecutions is in no way hampered. The District Attorney also appears to complain that unless cases are restored to the Active Calendar, dispositional conferences cannot be held. However, a Judge cannot be forced to plea bargain regardless of whether cases are on or off the Active Calendar. Certainly, the court cannot prevent a plea to the charges provided sentencing remains within the Judge's discretion and is not part of a bargain.

If the District Attorney believes that the court has attached excessive demands to the restoration of a case to the Active Calendar, the People's remedy is to answer ready for trial, make an appropriate record and then appeal should a dismissal ensue. Since a prosecutor may not dictate a Judge's use of discretion by means of a mandamus proceeding, the judgment of the Supreme Court should be affirmed.

SULLIVAN and ROSENBERGER, JJ., concur with MURPHY, P. J.; FEIN and MILONAS,. JJ., dissent in an opinion by MILONAS, J.

Judgment, Supreme Court, New York County, entered on February 13, 1985, reversed, on the law, and the petition is granted, without costs and without disbursements.