OPINION OF THE COURT
Richard M. Platkin, J.
On May 23, 2013, Colin Donnaruma, Daniel Morrissey, Eric Catine and Timothy Holmes (collectively the Occupy petitioners) commenced a special proceeding (proceeding No. 1) pursuant to CPLR article 78, seeking to compel the Honorable William A. Carter to dismiss the criminal charges pending against them in Albany City Court. Judge Carter has filed an answer in opposition to their verified petition (the Occupy petition).
Albany County District Attorney E David Soares did not file any response to the Occupy petition, but he did commence a second special proceeding (proceeding No. 2) on May 30, 2013, the day before scheduled suppression hearings in City Court. The petition filed in proceeding No. 2 (District Attorney’s petition) seeks to prohibit Judge Carter from ordering the prosecutor to call witnesses at the suppression hearings or from enforcing such an order through his contempt powers. Judge Carter opposes the District Attorney’s petition. The Occupy petitioners did not answer the District Attorney’s petition, but they informally join in the arguments made therein.
For the reasons that follow, the court concludes that a statement of a district attorney declining continued prosecution of a criminal case does not divest the court of jurisdiction or otherwise impose a mandatory duty upon the court to dismiss the case, even where the criminal defendant consents to dismissal. However, the trial court cannot order the district attorney to call witnesses at a suppression hearing or enforce such an order through contempt. Accordingly, the Occupy petition is denied, and the District Attorney’s petition is granted. Background
The Occupy petitioners were arrested on June 13, 2012 in the City of Albany in connection with the activities of Occupy Albany. Each of the Occupy petitioners is charged with one or more counts of disorderly conduct, a violation (Penal Law § 240.20 [5], [6]), and Colin Donnaruma also was charged with resisting arrest, a class A misdemeanor (id. § 205.30).
The Occupy petitioners were arraigned in City Court on June 14, 2012 before Judge Carter. At each arraignment, the District *198 Attorney’s Office (the Office) appeared for the People, filed a superseding information, made a bail recommendation, served a CPL 710.30 notice and declared readiness for trial. The cases were adjourned until June 19, 2012, at which time a briefing schedule for pretrial motions was set. At an August 21, 2012 appearance, the Office proposed to adjourn all of the charges in contemplation of dismissal. Judge Carter agreed, so long as the Occupy petitioners performed community service on behalf of military veterans. However, the Occupy petitioners rejected plea agreements that were conditioned upon community service at a September 7, 2012 court appearance.
On September 21, 2012, the Occupy petitioners filed identical motions to dismiss. Among other things, the motions sought an order “pursuant to (People v Di Falco, 44 NY2d 482 [1978] and Cantwell v Ryan, 309 AD2d 1042 [3d Dept 2003], aff’d 3 NY3d 626 [2004]), dismissing the accusatory instruments because the District Attorney has notified the Court that his office is declining to prosecute.” It appears that the Office had orally communicated such a declination to defense counsel, but not to City Court.
On October 4, 2012, almost four months after the initial appearances, the Office advised City Court that it “is declining to prosecute the charges” against the Occupy petitioners. The letter added that the Office “will not be participating in motion practice or future proceedings relating to the instant charges.”
The motions to dismiss were denied by City Court in substantively identical decisions dated November 26, 2012 (People v Donnaruma, 38 Misc 3d 506 [2012]). While recognizing the “wide latitude and discretion afforded a district attorney exercising his or her prosecutorial discretion” (id. at 508), Judge Carter determined that the District Attorney had affirmatively exercised his discretion to prosecute the charges against the Occupy petitioners by, among other things, filing a superseding accusatory instrument, declaring trial readiness, engaging in plea negotiations and appearing in court for conferences. Having exercised prosecutorial discretion to pursue the charges for almost four months, Judge Carter reasoned that the District Attorney was obliged to move for a dismissal in the interests of justice pursuant to the Criminal Procedure Law if he wished to discontinue the prosecutions. The decisions closed with the following caution:
“[G]iven the District Attorney’s October 4, 2012 letter stating that his office declines to prosecute these *199 charges and ‘will not be participating in motion practice or future proceedings,’ the Court is constrained to note that, should the Office of the District Attorney fail to appear at the next scheduled court date, this court may be forced to utilize one of the few available options left to it under these circumstances, including, but not limited to, its contempt powers (see Matter of Cloke v Pulver, 243 AD2d 185, 187-190 [3d Dept 1998] [noting three options for a trial judge where a district attorney refuses to prosecute a pending matter]).” (Id. at 510.)
On December 4, 2012, the Office wrote to Judge Carter to advise that “the People will not be going forward or calling any witnesses at any hearings or trials scheduled in the above captioned matters and are, accordingly, not ready for trial pursuant to CPL 30.30.” The letter further stated that the Office “will, of course, be present at any and all scheduled court dates.”
The Occupy petitioners filed a second round of dismissal motions on January 12, 2013, contending principally that: (a) the speedy trial/readiness period established by CPL 30.30 had expired; and (b) the District Attorney’s decision not to prosecute represented a “legal impediment to conviction” within the meaning of CPL 170.30 (1) (f). In a letter dated January 28, 2013, the Office advised that it did not oppose the defense motions to dismiss.
In decisions dated April 12, 2013 (People v Donnaruma, 39 Misc 3d 1056 [2013]), Judge Carter denied as untimely the branch of the motions seeking dismissal on account of a jurisdictional or legal impediment to conviction, ruling that such an application should have been included in the prior motions or otherwise made within the prescribed period (see CPL 255.20 [1]). As to the request for speedy trial/readiness relief, Judge Carter declined the Occupy petitioners’ request to charge the period between August 28, 2012 and the date of the motion solely to the People as post-readiness delay, explaining as follows:
“The entire basis of the defendant’s CPL 30.30 post-readiness motion is premised upon what this court previously deemed to be a legal nullity: the Albany County District Attorney’s hearsay statement to defense counsel and two letters filed with the court, that were not affirmed, pronouncing his decision to not prosecute this case. While it is not entirely clear, *200 it appears that the Albany County District Attorney has been attempting to invoke the doctrine of nolle prosequi through the filing of the above two letters with this court declaring his intention to decline prosecution. . . . However, in 1881, with the passage of section 672 of the Code of Criminal Procedure, entry of a nolle prosequi was abolished. In 1970, with the passage of Criminal Procedure Law, the legislature enacted section 170.30 as an ‘all inclusive’ comprehensive legislative scheme for dealing with motions to dismiss local criminal court accusatory instruments. Thus, in the absence of a CPL 170.30 motion, the District Attorney’s pronouncement of his subjective feelings, including verbalization of his prosecutorial discretion, is legally irrelevant” (39 Misc 3d at 1059-1060 [citations omitted]).
In addition to holding that “failure to prosecute is not a legally cognizable ground for dismissal by the court, even within the context of a claim of postreadiness delay” (id. at 1061, citing People v Anderson, 66 NY2d 529, 537 [1985]), the denial of CPL 30.30 relief was independently supported by reference to the Occupy petitioners’ failure “to set forth any mathematical calculation, including applicable exclusions, to support [the speedy trial] motion[s]” (id.).
The decisions closed by noting the following: First, neither the District Attorney nor the Occupy petitioners had moved at any point to dismiss the charges in furtherance of the interests of justice in accordance with CPL 170.30 (1) (g). Second, the District Attorney had not provided the court with any explanation or rationale for declining continued prosecution of the Occupy cases. Third, the District Attorney had not provided the court with any explanation for his refusal to pursue an interests of justice dismissal. Finally, Judge Carter stated that the record before him did not permit consideration of an interests of justice dismissal on the court’s own initiative, as authorized by CPL 170.40 (2).
The parties returned to City Court on May 24, 2013 for combined suppression hearings. The Office was present, but declined to call any witnesses or otherwise oppose the defense motions. The following dialogue between Judge Carter and Chief Assistant District Attorney (ADA) David Rossi ensued:
“COURT: . . . Would you please place on the record your reasons for not calling any witnesses in this proceeding.
*201 “ADA: Your Honor the District Attorney has made a decision to decline prosecution in this matter. We haven’t opposed any of the defense motions. We don’t plan to oppose their motions. And to the extent that we are required to be in court and appear on the matter, we’ll do that, but we’ll not be going forward and meeting our burden.
“COURT: ... I actually need to make sure that you understand your duties and obligations with regard to this hearing. And simply appearing here does not fulfill your obligations. . . .
“COURT: [You are] obligated to participate.
“ADA: I am here to participate, your Honor.
“COURT: Call your first witness.
“ADA: The People have no witnesses, your Honor. “COURT: Is it because they are unavailable or you did not notice your witnesses?
“ADA: The People have no intention o[f] calling any witnesses.
“COURT: ... I need to understand why you are not doing that. If they are unavailable, I will be happy to give you an adjournment. If you are refusing to call them, that is a completely different matter.
“ADA: . . . [T]he People have made it clear, from the beginning, that they were declining prosecution in this matter.”
After further discussions in which the Chief ADA emphasized that the District Attorney’s decision not to call any witnesses was an affirmative exercise of prosecutorial discretion, the following colloquy ensued:
“ADA: ... I don’t believe that we are defying a lawful order of the Court. We are here. We’ll be present in court. But I don’t believe it is . . .up to the Court to decide what proof the People will present and what proof the People won’t present or what witnesses they will call or what witnesses they won’t call.
“COURT: I would agree with you. And that is not what I am doing. You are refusing to go forward. . . . [B]y willfully refusing to participate, that’s not something that the Court can allow to happen ....
“ADA: I understand the Court’s position. Your *202 Honor. Our position remains the same.
“COURT: If that is your position, are you aware you are limiting my options?
“ADA: I don’t believe I am, your Honor. . . .
“COURT: Well, you may not believe it, but if I gave you some time to research the issue, you might find that I am limited in what I can do. However, one of the things that I could do is to hold you in contempt. I have no desire to do that.”
The day before the combined suppression hearings were to resume, the District Attorney commenced proceeding No. 2 by an order to show cause that included a temporary restraining order staying the City Court cases. The temporary relief was granted with the consent of all parties. Given the closely related nature of the two special proceedings, the court informally consolidated them for briefing, argument and disposition. Oral argument was held on June 28, 2013, and this consolidated decision, order and judgment follows.
Legal Standard
“It is familiar law that an article 78 proceeding in the nature of prohibition will not lie to correct procedural or substantive errors of law” (Matter of Schumer v Holtzman, 60 NY2d 46, 51 [1983]).
“Rather, the extraordinary remedy ‘of prohibition may be obtained only when a clear legal right of a petitioner is threatened by a body or officer acting in a judicial or quasi-judicial capacity without jurisdiction in a matter over which it has no power over the subject matter or where it exceeds its authorized powers in a proceeding of which it has jurisdiction’ ” (Matter of Soares v Herrick, 20 NY3d 139, 145 [2012] [internal quotation marks omitted], quoting Matter of Morgenthau v Erlbaum, 59 NY2d 143, 147 [1983]).
“[E]yen where prohibition is an available remedy, it ‘is not mandatory, but may issue in the sound discretion of the court’ ” (id., quoting La Rocca v Lane, 37 NY2d 575, 579 [1975]).
“ ‘In exercising this discretion, various factors are to be considered, such as the gravity of the harm caused by the excess of power, the availability or unavailability of an adequate remedy on appeal or at law or in equity and the remedial effectiveness of prohibition if such an adequate remedy does not ex *203 ist’ ” (id., quoting Matter of Dondi v Jones, 40 NY2d 8, 13 [1976]).
A proceeding under CPLR article 78 in the nature of mandamus “lies only to compel the performance of acts which are mandatory, not discretionary, and only when there is a clear legal right to the relief sought” (Matter of Johnson v Corbitt, 87 AD3d 1214, 1215 [3d Dept 2011]).
The Occupy Petition
The Occupy petition alleges that Judge Carter “is improperly interfering with the discretion of the District Attorney” (Occupy petition ¶ 21). This interference allegedly arises from Judge Carter’s denial of the defense motions to dismiss and his ruling that the District Attorney must move for an interests of justice dismissal “in order to exercise his discretion to decline to prosecute” (Occupy petition ¶¶ 22, 27). By “directing that the cases go forward and scheduling them for hearings,” Judge Carter is alleged to be acting in excess of his lawful jurisdiction (id. ¶ 30). On the basis of the foregoing allegations, the petition seeks a writ of prohibition restraining Judge Carter from continuing to exercise jurisdiction over the Occupy cases and a writ of mandamus compelling him to dismiss the cases.
Analysis of the Occupy petition necessarily begins with the recognition that “a district attorney is the chief law enforcement officer of his or her county and is charged with the exclusive obligation and authority to determine when and in what manner a suspect is to be prosecuted” (Matter of Cantwell v Ryan, 309 AD2d 1042, 1042 [3d Dept 2003], affd 3 NY3d 626 [2004] [citations omitted]). “In that regard, it is firmly established that a district attorney enjoys unfettered discretion to determine whether to prosecute a particular suspect, and the courts may not and should not interfere with that discretion” (id. at 1042-1043). Nonetheless, as with all public officers, a district attorney must exercise the powers, duties and discretion of office in accordance with the state constitution, the laws enacted by our legislature, and the rules, precedents and lawful orders of the courts.
“There was a time — almost two centuries ago — when the power to dismiss . . . was the prosecutor’s, and the prosecutor’s alone” (People v Extale, 18 NY3d 690, 694 [2012]). “At early common law, the dismissal of criminal proceedings before a verdict was reached was accomplished by [prosecutors’] entry of a nolle prosequia “formal entry on the record by the prosecuting officer by which he declares that he will not prosecute *204 the case further” (People v Douglass, 60 NY2d 194, 201 and n 3 [1983], quoting Black’s Law Dictionary 945 [5th ed 1979]).
In 1828, the state legislature enacted a law requiring prosecutors to obtain leave of court to enter a nolle prosequi (id. at 202). This system remained in place until 1881, when the Code of Criminal Procedure was adopted. Under the Code, “the nolle prosequi was abolished and the power to dismiss transferred from the prosecutor to the judge” (Extale, 18 NY3d at 694). A district attorney seeking to “ ‘discontinue or abandon a prosecution for a crime’ ” was required to apply to the court for an order of dismissal “in furtherance of justice” (id., quoting Code Crim Pro §§ 671, 672; see Douglass, 60 NY2d at 203-204).
With the enactment of the Criminal Procedure Law in 1970, the substance of the Code governing the discontinuance of criminal cases
“was incorporated in what is now CPL 210.40 (3), which says: ‘An order dismissing an indictment in the interest of justice may be issued upon motion of the people or of the court itself as well as upon that of the defendant. Upon issuing such an order, the court must set forth its reasons therefor upon the record’ ” (Extale, 18 NY3d at 694-695).
A substantively identical provision governing the dismissal of an information or complaint appears in CPL 170.30 (1) (g) and 170.40. Just last year, the Court of Appeals reaffirmed that nothing in the enactment of the Criminal Procedure Law “brought the nolle prosequi back into existence” or otherwise “restore [d] to prosecutors the unilateral right to refuse to proceed” with a pending count of an indictment (id. at 695).
The Criminal Procedure Law — which has been described as “an integrated and comprehensive system of laws . . . carefully designed to protect individual freedoms, to safeguard the public and to promote respect for law and the legal process” (Douglass, 60 NY2d at 205 [internal quotation marks omitted])— establishes seven grounds for the dismissal of an accusatory instrument (see CPL 170.30 [1] [a]-[g]). The statute “set[s] forth, in an all inclusive manner, the grounds upon which a misdemeanor complaint [or information] may be dismissed” (Douglass, 60 NY2d at 201). The Court of Appeals has held that a court has no authority “to depart from the clear wording of CPL 170.30” by dismissing a misdemeanor complaint for reasons other than those prescribed by the legislature (id. at 204-205 [overturning dismissals for “failure to prosecute”]; see *205 also Extale, 18 NY3d at 695 [rejecting claim that prosecutor can “choose not to proceed with” a charged count]).
The Occupy petitioners seek to distinguish these cases on the ground that the prosecutor in Douglass objected to the dismissals for “failure to prosecute,” and the defendant in Extale objected to the withdrawal of the charged count. Here, the District Attorney and criminal defendants stand united in the view that prosecution of the Occupy cases should not continue. However, Douglass and Extale turned on issues of statutory construction and legislative intent, not on the absence of an agreement between the parties. In concluding that the power to dismiss criminal cases lies solely with the courts, the Court of Appeals relied upon the history of nolle prosequi in New York and a careful examination of the text, structure, history and purpose of the Criminal Procedure Law and its dismissal provisions. This mode of analysis and the conclusions drawn by the Court of Appeals therefrom represent a powerful rebuttal to the Occupy petitioners’ claim that Judge Carter is acting in excess of his lawful jurisdiction by refusing to dismiss the Occupy cases based on the District Attorney’s statement declining continued prosecution.
The court also rejects the related contention advanced by the District Attorney in proceeding No. 2: that the power of nolle prosequi was abolished only with respect to grand jury indictments. The argument that a New York prosecutor can enter a nolle prosequi on a misdemeanor or information runs counter to Douglass, which holds that the grounds for dismissal set forth in CPL 170.30 are exclusive (id. at 205). Further, the Court of Appeals’ recent pronouncement that “[t]he nolle prosequi power still does not exist” was based upon an 1881 statute that broadly and unqualifiedly “abolished” the entry of a nolle prosequi and divested prosecutors of the power to “discontinue or abandon a prosecution for a crime” (18 NY3d at 694-695 [internal quotation marks omitted and emphasis added]). Moreover, the Criminal Procedure Law treats the dismissal of indictments and other accusatory instruments in a substantially similar manner.[1]
In seeking to avoid the clear import of Extale and Douglass, the Occupy petitioners rely principally upon People v Beckman (38 Misc 3d 878 [2012]), wherein Columbia County Court *206 dismissed an indictment after the district attorney stated on the record that he declined to prosecute and the defendant raised no objection. In concluding that the prosecutor was not obliged to move for dismissal in the interests of justice pursuant to CPL 170.30 (1) (g), Beckman relied upon the inherent power of a court to dismiss a case where the prosecutor unequivocally declines to prosecute and the defendant does not object (id. at 879-880). Douglass was distinguished as a case where the dismissal for “failure to prosecute” was made over the prosecutor’s objection, rather than in furtherance of prosecutorial discretion (id. at 880-881). Additionally, Beckman relied upon language in Extale leaving open the issue of whether a court may have inherent power to dismiss a charged count with the consent of the prosecutor in circumstances other than those provided for in the Criminal Procedure Law (18 NY3d at 695).
The court does not find the Occupy petitioners’ invocation of Beckman to be availing. At issue in Beckman was County Court’s authority to discontinue a pending criminal case in a manner not authorized by the CPL. Even if a trial court possesses inherent authority of the type left open in Extale and exercised in Beckman — a point on which this court need not and does not express a view — the issue here is not whether Judge Carter has the power to dismiss the Occupy cases. To prevail, the Occupy petitioners must establish that Judge Carter is under a mandatory duty to dismiss the cases.
The existence of such a mandatory duty is foreclosed by the legislature’s abolition of nolle prosequi and its transfer of the discretionary power to dismiss criminal cases from prosecutors to the courts (see Extale, 18 NY3d at 694). Moreover, the Occupy petitioners’ argument runs counter to Beckman itself, which recognized that a trial court would be justified in denying an unopposed request for dismissal if there is a “demonstrated evidentiary basis” establishing that “the prosecutor is derelict in his or her duty through misconduct, fraud, collusion, incapacity or the like” (38 Misc 3d at 880).
It is apparent from the foregoing that Judge Carter properly recognized that the District Attorney has no authority to effect a discontinuance of the Occupy prosecutions by means of nolle prosequi or other statement declining continued prosecution.[2] *207 And City Court was not divested of jurisdiction by any such attempted plea or statement, and Judge Carter properly proceeded to rule on the defense motions to dismiss and schedule further proceedings upon the denial of the motions.
Insofar as the Occupy petition is premised upon the narrower contention that Judge Carter erred in his speedy trial/readiness analysis, settled law holds that “the extraordinary remedy of a writ of prohibition does not lie where the claim is a denial of statutory or constitutional speedy trial rights” (Matter of Cummings v Koppell, 212 AD2d 11, 15 [3d Dept 1995]; see Matter of Neal v White, 46 AD3d 156, 161 [1st Dept 2007]; see also Matter of Schumer, 60 NY2d at 51). Accordingly, even if the Occupy petitioners were to establish that the People hear sole responsibility for post-readiness delays following the District Attorney’s formal declaration of “unreadiness” on December 4, 2012 (or even his earlier Oct. 4, 2012 statement “declining to prosecute”), a writ of prohibition will not lie.[3]
The branch of the Occupy petition seeking a writ of prohibition based upon the denial of the CPL 170.30 (1) (f) motion stands on even weaker footing. That motion was denied on procedural grounds under a highly discretionary standard (see CPL 170.30 [2], [3]; see also Matter of Veloz v Rothwax, 65 NY2d 902, 903 [1985]). Moreover, CPL 170.30 (1) (f) is a broad catchall, and its reference to “some other jurisdictional or legal impediment to conviction” must be construed by reference to the specific grounds for dismissal appearing with it in the statute (see e.g. Tverskoy v Ramaswami, 83 AD3d 1195 [3d Dept 2011]). While a prosecutor’s unwillingness to pursue charges certainly represents an impediment to conviction, a statement declining prosecution does not deprive the court of jurisdiction and is not itself a “legal” impediment to conviction similar to the threshold defenses appearing with it in the statute.
Similar considerations compel the denial of the branch of the Occupy petition seeking the extraordinary remedy of mandamus. Judge Carter was not under a mandatory duty to dismiss the cases based upon the District Attorney’s stated refusal to *208 continue prosecution. Further, a writ of mandamus cannot be used to compel a court to decide a motion “in a particular manner. It is not, like a writ of error or appeal, a remedy for erroneous decisions” (People ex rel. Francis v Common Council of City of Troy, 78 NY 33, 39 [1879]). Accordingly, any claims of error in the disposition of the defense motions to dismiss must “be left to the normal avenues of appellate review” (Matter of Legal Aid Socy. of Sullivan County v Scheinman, 53 NY2d 12, 16 [1981]; see Matter of Morrison v Hynes, 82 AD3d 772, 772-773 [2d Dept 2011]).
The District Attorney’s Petition
Having rejected the petition seeking to compel Judge Carter to dismiss the Occupy cases, the court must consider the issues raised by the District Attorney’s petition, which concern the continued prosecution of the cases.
The District Attorney adheres to the position that his office will not call witnesses at the suppression hearings or any eventual trials, though prosecutors will be physically present in court. This is said to represent a legitimate exercise of prosecutorial discretion. The petition alleges that by requiring the office to call witnesses under penalty of contempt, Judge Carter is violating separation of powers principles and threatening to act outside of his judicial jurisdiction.
Judge Carter responds that the District Attorney’s duty as a prosecutor extends beyond merely showing up in court. Having exercised his discretion to prosecute the Occupy cases for almost four months and having further exercised his discretion to decline to move for their dismissal in the interests of justice, the District Attorney is — in Judge Carter’s view — obliged to faithfully prosecute the cases to the extent supported by the facts and the law. While Judge Carter disclaims any intention of directing the specific manner of prosecution, the record establishes that he expects witnesses to be called and proof offered at the suppression hearings and at any eventual trials.
Unsurprisingly, there is little, if any, precedent that speaks directly to these issues. After all, a district attorney who wishes to discontinue a pending case ordinarily exercises his or her prosecutorial discretion by filing a motion to dismiss in the interests of justice (CPL 170.30 [1] [g]; 210.40 [3]). In rare cases, a prosecutor may ask the court to invoke its inherent power to dismiss a case upon consent, or a court may even invoke this power on its own initiative (see Beckman at 879). But the District Attorney takes the position here that he may *209 decline to continue prosecution of the Occupy cases without making a motion to dismiss, without providing the court with a record basis for dismissal and without explaining his refusal to pursue dismissal of the cases through regular means.
Had an appropriate application been made, the burdens attendant to this interbranch controversy likely could have been avoided. While the court expresses no view on the merits of such a hypothetical motion and assumes that even an uncontested motion to dismiss is subject to denial in certain circumstances (see Beckman, 38 Misc 3d at 880-881), the District Attorney is entitled to a presumption that he is acting in good faith and that his decision to decline continued prosecution is based upon legitimate considerations. Moreover, the parties have not cited, and the court is not aware, of any reported cases where a New York court has rejected the specific rationale for dismissal proffered by a prosecutor on an unopposed motion to dismiss.[4] The same is true in federal practice, where it appears that no federal appellate court has ever upheld the denial of a prosecutor’s unopposed request for leave to dismiss a criminal prosecution (In re United States, 345 F3d 450, 452-453 [7th Cir 2003]).
As a result of the highly unusual course charted by the District Attorney in the Occupy cases, Judge Carter was presented with a difficult and troubling situation. He responded properly by considering all available options, including his contempt powers (Matter of Cloke v Pulver, 243 AD2d 185, 189 [3d Dept 1998]). However, for the reasons stated below, a trial court cannot order a district attorney to call witnesses at a suppression hearing or enforce such an order through its contempt powers.
“The concept of the separation of powers is the bedrock of the system of government adopted by this State in establishing three coordinate and coequal branches of government, each charged with performing particular functions” (Matter of Maron v Silver, 14 NY3d 230, 258 [2010]). “ ‘[T]he executive, legislative and judicial branches [are assigned] distinct and independent powers’ ” (id., quoting People ex rel. Burby v Howland, 155 NY 270, 282 [1898]). It is “a fundamental principle of the organic law that each department should be free from interfer *210 ence, in the discharge of its peculiar duties, by either of the others” (id. [citations omitted]).
A district attorney is a constitutional officer chosen by the electors of a county for a specified term (NY Const, art XIII, § 13). It is the duty of the district attorney “to conduct all prosecutions for crimes and offenses” within his or her geographic jurisdiction (County Law § 700 [1]). In discharging this executive function of law enforcement, a district attorney possesses broad authority and discretion over all phases of a criminal prosecution (see e.g. People v Cajigas, 19 NY3d 697, 703 [2012] [filing of appropriate charges at outset of case]; People v Di Falco, 44 NY2d 482, 486 [1978] [“what manner to prosecute a suspected offender”]; Matter of Soares v Herrick, 88 AD3d 148 [3d Dept 2011]], affd 20 NY3d 139 [2012] [allocation and use of prosecutorial staff and resources; see also Cantwell, 309 AD2d at 1042-1043]).
The broad and unqualified statutory authority of a district attorney “to conduct” a prosecution plainly carries with it the power to make decisions regarding the witnesses to be called on behalf of the People, the testimony to be elicited, the other proof offered into evidence and the arguments to be made. And a district attorney necessarily possesses concomitant authority to decline to call particular witnesses, put on certain proof or advance particular arguments. The District Attorney seeks to test the bounds of this authority by declining to offer any witnesses, evidence or arguments in support of the pending charges — conduct that has been described by some legal commentators as a form of “prosecutorial nullification” (see generally Roger A. Fairfax Jr., Prosecutorial Nullification, 52 BC L Rev 1243 [2011]).
While the situation presented to Judge Carter was extreme, he has not identified any provision of law that: limits or regulates the manner in which a district attorney exercises his or her statutory duty “to conduct” a criminal prosecution; mandates any particular manner or degree of prosecutorial “participation”; or obliges a prosecutor to call witnesses at a suppression hearing (see CPL 710.60).[5] There simply are no judicially enforceable standards governing the exercise of these highly, if not wholly, discretionary functions. Accordingly, they *211 are matters committed to the judgment of responsible executive branch officials, not the courts.
To be sure, Judge Carter properly eschews any desire to interfere with the specific manner in which the District Attorney exercises his prosecutorial discretion. He merely seeks for the District Attorney to faithfully prosecute the Occupy cases or to move for their dismissal in the interests of justice upon a proper record, as the legislature seemingly contemplated in enacting the Criminal Procedure Law. By refusing to seek dismissal but declining to call witnesses or offer proof, the District Attorney is said to be attempting to do indirectly what the legislature has prohibited him from doing directly: exercising the power of nolle prosequi.
But even if Judge Carter’s assessment of the situation is correct and the District Attorney’s actions are ultra vires or go beyond the bounds of permissible discretion, the remedy does not lie in a trial court assuming an unauthorized prosecutorial role or acting in excess of its judicial jurisdiction. Even a generalized directive to “prosecute” contemplates ongoing judicial review of the manner in which a prosecution is conducted, and enforcement of such an order would inappropriately entangle the court in a supervisory role. If a district attorney must “participate” in a suppression hearing by calling witnesses, who must be called? What questions must they be asked? What other evidence must the prosecutor seek to introduce? Must legal arguments be made, and, if so, which ones? Questions such as these simply are not amenable to judicial review or oversight; they are matters committed to the executive branch.[6]
Accordingly, the court concludes that an order compelling the District Attorney to participate in the Occupy prosecutions in the manner contemplated by Judge Carter is ultra vires (see Matter of Briggs v Halloran, 12 AD3d 1016 [3d Dept 2004]). As such, the order is not the proper subject of a contempt proceeding. In reaching this conclusion, the court is unpersuaded by Judge Carter’s reliance on Matter of Cloke v Pulver. While factually analogous in certain respects, the critical issue in Cloke was *212 whether the appointment of the special prosecutor was authorized by statute, a question the Third Department answered in the negative (see 243 AD2d at 187, 189). The dicta emphasized by Judge Carter merely observed that the trial court had not “considered” its contempt powers in response to the prosecutor’s refusal to proceed (id. at 189). Here, Judge Carter appropriately “consider[ed] his contempt powers,” but the underlying order he threatens to enforce falls outside of his lawful jurisdiction.
The conclusion that a judge cannot compel a prosecutor to call witnesses is in accord with the limited federal authorities that speak to the issue. In evaluating applications by prosecutors for leave of court to dismiss pending cases,[7] federal judges occasionally consider the consequences of denying leave: the “what next?” question, as aptly framed in United States v Greater Blouse, Skirt & Neckwear Contrs. Assn. (228 F Supp 483, 489 [SD NY 1964]):
“Should the motion be denied, what next? The Attorney General is the head of the Department of Justice, a part of the Executive branch of the Government. Even were leave of court to the dismissal of the indictment denied, the Attorney General would still have the right to adhere to the Department’s view that the indictment cannot be supported by proof upon a trial of the merits, and accordingly, in the exercise of his discretion, decline to move the case for trial. The Court in that circumstance would be without power to issue a mandamus or other order to compel prosecution of the indictment, since such a direction would invade the traditional separation of powers doctrine.”
Thus, in United States v Sullivan (652 F Supp 2d 136, 140 and n 10 [D Mass 2009]), the district court reluctantly granted leave to dismiss, reasoning that if it “were to refuse to dismiss the charge, the United States Attorney could merely decide not to present any evidence at the trial which would require the Court to enter a judgment of acquittal.” Likewise, Judge Richard Arcara of the Western District of New York observed: “[I]f the Court were to deny the motion and require the govern *213 ment to proceed to trial, the government would refuse to offer any evidence, thereby leaving this Court with no choice but to enter judgment of acquittal” (United States v Marra, 228 F Supp 2d 280, 283 [WD NY 2002]; see also United States v N. V. Nederlandsche Combinatie Voor Chemische Industrie, 453 F Supp 462, 463 [SD NY 1978] [“The court greatly regrets that its efforts to force the government to trial have been unavailing.”]).
Federal appellate decisions also reflect the prevailing view that a “trial court cannot compel the prosecutor to proceed with the prosecution” (United States v Hamm, 659 F2d 624, 632 [5th Cir 1981]; see In re Richards, 213 F3d at 786 [“there seems to be no way to compel the prosecutor to proceed”]; see generally 3B Wright and Miller, Federal Practice and Procedure § 802 [4th ed]). As the Fifth Circuit explained, “[t]he result is that although the court is authorized to deny the motion to dismiss . . . , it is nevertheless constitutionally powerless to compel the government to proceed” (United States v Cowan, 524 F2d 504, 511 [5th Cir 1975]).[8]
While the foregoing analysis necessarily focuses on the institutional roles of prosecutors and judges, the court also is mindful of the other essential participant in the process: the criminal defendant. An order compelling an unwilling district attorney to put on proof under threat of imprisonment seems incompatible with the proper role of the courts. “We of the judiciary are called upon to impartially preside over and adjudicate criminal proceedings” (Cantwell, 309 AD2d at 1043). In this role, a judge serves as a check on the executive branch in enforcing the criminal laws enacted by the legislative branch. Vesting
“the plenary prosecutorial power in the executive branch safeguards liberty, for, in conjunction with the plenary legislative power of [the legislature], it assures that no one can be convicted of a crime without the concurrence of all three branches .... When a judge assumes the power to prosecute, the *214 number shrinks to two” (In re United States, 345 F3d at 454).
The conclusion that district attorneys are not accountable to the judiciary for failing to pursue criminal convictions does not mean that they are unaccountable. Our State Constitution makes district attorneys answerable to the people of their county, before whom they stand for election to serve as “guardian of th[e] public trust” (People v Zimmer, 51 NY2d 390, 396 [1980]). During their term of office, district attorneys also are accountable to the Governor, who may remove a district attorney from office (NY Const, art XIII, § 13) or supersede a district attorney by transferring prosecutorial authority over a particular matter to the Attorney General (Executive Law § 63 [2]; see Matter of Johnson v Pataki, 91 NY2d 214 [1997]). And while a hearing or trial at which a district attorney declines to put on any proof may be described as a hollow ritual or worse (see Beckman, 38 Misc 3d at 881-882), those charged under our State Constitution and laws with holding district attorneys accountable are entitled to transparency and openness in order to make informed judgments. Such a proceeding also provides a clear line of accountability for the resulting dismissal with prejudice of the criminal charges.
In adopting a balanced system that leaves district attorneys without the power to dismiss pending cases and courts without the power to compel district attorneys to prosecute them, the framers necessarily left open the prospect of interbranch stalemates, where “the actions of one Branch may be brought to naught by the actions or inactions of another” (Young v United States ex rel. Vuitton et Fils S. A., 481 US 787, 817 [1987]). Fortunately, in the 192 years that have passed since the legislature divested prosecutors of the unilateral authority to discontinue criminal cases, disputes such as this one remain relatively rare. This speaks powerfully to the ability of prosecutors and courts to work cooperatively in a manner not only consistent with the law, but also with due respect for the roles of our separate, coequal branches of government, the rights of criminal defendants, and the integrity and perception of our criminal justice system. The parties are encouraged to engage in similar efforts upon their return to City Court.
Based on the foregoing, the court determines that the District Attorney has demonstrated his entitlement to a writ of prohibition enjoining the enforcement of Judge Carter’s orders of November 26, 2012 and May 24, 2013 insofar as they require *215 the District Attorney to call witnesses or put on proof at the suppression hearings. The court further determines that issuance of the writ represents an appropriate exercise of this court’s remedial discretion under all of the facts and circumstances of this proceeding (see Dondi, 40 NY2d at 13). Conclusion
Accordingly,[9] it is ordered that the petition in proceeding No. 1 is denied in all respects, and the petition is dismissed; and it is further ordered that the petition in proceeding No. 2 is granted; and it is further ordered and adjudged that the Honorable William A. Carter is prohibited and enjoined from enforcing his orders of November 26, 2012 and May 24, 2013 insofar as they require the District Attorney to call witnesses or put on proof at the suppression hearings in the criminal cases pending against the Occupy petitioners; and finally it is ordered that any temporary restraints previously imposed in these special proceedings are hereby lifted.

. The role of the grand jury in the indictment process does give rise to additional grounds for dismissal (see generally CPL art 210).

. It bears emphasis that this is not a case where a district attorney exercised discretion to decline prosecution from the outset. Rather, as observed by Judge Carter, in the first four or so months that the cases were pending in *207 City Court, the District Attorney appeared at arraignments, filed superseding accusatory instruments, made bail recommendations, served CPL 710.30 notices, declared readiness for trial, attended court conferences, engaged in plea negotiations and brought proposed plea agreements to the court.

. For this reason, the court need not and does not consider whether Judge Carter was obliged to accept at face value the District Attorney’s representation that his office was unready for trials at which no witnesses would be called and no evidence introduced.

. To be sure, there are cases where courts have declined to dismiss a case based upon a general “statement by the DA’s Office that they decline to prosecute” (People v Rossi, 39 Misc 3d 496, 500 [Stuyvesant Just Ct, Columbia County 2013]).

. Even if the statute at issue were cast in mandatory terms (cf. CPL 260.30 [5]), it is by no means clear that the legislature intended for judicial enforcement through contempt.

. Of course, trial courts also possess broad authority and discretion in exercising the state’s judicial power. A court may “fashion necessary procedures consistent with constitutional, statutory, and decisional law” (People v Wrotten, 14 NY3d 33, 37 [2009]), and regulate the conduct of the attorneys who appear before it (La Rocca v Lane, 37 NY2d 575, 581 [1975]). However, the orders and directives at issue herein cannot be understood as merely regulating practice or procedure.

. Federal Rules of Criminal Procedure rule 48 (a) “alter[ed] the traditional common law nolle prosequi power of executive authorities by requiring ‘leave of the court’ to dismiss a prosecution” (In re Richards, 213 F3d 773, 784 [3d Cir 2000]). As such, rule 48 (a) is substantially similar to the New York law in effect from 1828 until 1881.

. Similar considerations were relied upon by Judge Nichols in Beckman as a basis for County Court’s invocation of its inherent powers:
“One need only ponder for a moment to foresee the result should the court mandate prosecution of the charge in such a setting. At a scheduled trial, the People could . . . decline to present any witness or other evidence to support the charge, necessarily resulting in the same conclusion reached here, now and without objection: dismissal with prejudice” (Beckman, 38 Misc 3d at 881).

. The court has considered the parties’ remaining arguments and contentions, but finds them unavailing or unnecessary to the disposition ordered herein.