■ In the Matter of P. DAVID SOARES, as District Attorney of Albany County, Respondent, v WILLIAM A. CARTER, as Judge of the City Court of the City of Albany, Appellant, and COLIN DONNARUMA et al., Respondents. (And Another Related Proceeding.) [979 NYS2d 201]—

Lahtinen, J.P.

In June 2012, City of Albany police arrested four individuals—respondents Colin Donnaruma, Daniel Morrissey, Eric Catine and Timothy Holmes (hereinafter collectively referred to as the defendants)—charging each with the violation of disorderly conduct and one of the four was also charged with a misdemeanor of resisting arrest. After arraignment and various proceedings, including petitioner's[1] declaration of readiness for trial, petitioner offered each defendant a six-month adjourn-

---

1. The reference to petitioner herein includes assistant district attorneys who acted on petitioner's behalf.

ment in contemplation of dismissal. Respondent City Court Judge of the City of Albany (hereinafter respondent) refused to accept such pleas unless combined with community service, which the defendants rejected. In September 2012, the defendants filed a motion to dismiss because, by such time, petitioner had decided not to continue prosecuting the cases. Respondent denied the motion, stating that petitioner had pursued and participated in the prosecution of the cases to a point where he could not, consistent with the Criminal Procedure Law (hereinafter CPL), simply walk away from the cases, and further that the defendants had failed to supply an appropriate statutory basis for their dismissal motion. Respondent indicated that petitioner's failure to appear at subsequent court dates in the defendants' cases could result in the court resorting to its contempt powers.

Thereafter, petitioner appeared in court for all matters related to the defendants' cases, but took no action to advance the cases or oppose the defendants' subsequent request for dismissal, which respondent denied. At a May 2013 suppression hearing, petitioner stated that no witnesses would be called or proof presented. During a lengthy discussion between respondent and petitioner, respondent told petitioner that simply appearing did not fulfill his obligation and warned that his willful refusal to participate could result in the court holding him in contempt. The hearings as to all defendants were then adjourned for one week.

Shortly before the May 2013 suppression hearing appearance, the defendants had commenced a CPLR article 78 proceeding seeking to require respondent to dismiss their cases and prohibit him from compelling petitioner to prosecute the cases. Petitioner commenced a CPLR article 78 proceeding immediately after the suppression hearing appearance seeking to prohibit respondent from ordering him to call witnesses under threat of contempt at the adjourned suppression hearings. Supreme Court considered the petitions together and rendered a thorough written decision (*Matter of Donnaruma v Carter*, 41 Misc 3d 195 [2013]) in which it dismissed the defendants' petition, but granted petitioner's petition to the extent of prohibiting respondent from requiring petitioner to call witnesses or put in proof at the suppression hearings. Respondent appeals.

Respondent first contends that Supreme Court based its decision upon an incorrect factual determination that he had ordered petitioner to call witnesses at the suppression hearing under threat of contempt. While respondent did not make such a direct statement in one sentence, review of the record sup-

ports Supreme Court's determination. For example, at the suppression hearing, respondent stated that petitioner was ignoring his prior order by not calling witnesses, he characterized petitioner's position as willfully refusing to participate, and added that, if petitioner maintained his position, one of the options available was to hold him in contempt. Statements made in the course of a conversational exchange may not reflect a position with the same exactitude as when given the opportunity to write, reflect and edit, nonetheless it was appropriate for Supreme Court to ascribe the clear meaning to the words used during the colloquy; and those words suggest that petitioner would be held in contempt if he did not call witnesses at the adjourned suppression hearings.

The CPL does not mandate that a district attorney call witnesses at a suppression hearing (*see* CPL 710.60), and Supreme Court succinctly set forth some of the potential serious problems that would arise if a trial court required a district attorney to do so (41 Misc 3d at 211). Since requiring a prosecutor to call witnesses to avoid being held in contempt would exceed the trial court's authority and impact the entire proceeding, we are unpersuaded that Supreme Court's narrowly tailored order of prohibition constituted an abuse of its discretion (*see Matter of Holtzman v Goldman*, 71 NY2d 564, 569 [1988]; *Matter of Farrell v LaBuda*, 94 AD3d 1195, 1197 [2012], *lv denied* 19 NY3d 808 [2012]; *Matter of Briggs v Halloran*, 12 AD3d 1016, 1017 [2004]; *Matter of Cantwell v Ryan*, 309 AD2d 1042, 1043 [2003], *affd* 3 NY3d 626 [2004]).

Next, respondent argues that Supreme Court erred in issuing a judgment prohibiting him from exercising contempt powers. Supreme Court's judgment is not so sweeping. The court merely prohibited respondent from "requir[ing] [petitioner] to call witnesses or put on proof at the suppression hearings in the criminal cases pending against [the defendants]" (41 Misc 3d at 215). This judgment does not, as theorized by respondent, lead to the conclusion that respondent has been stripped of his power to require petitioner to comply with the CPL. Supreme Court's judgment does not directly diminish respondent's contempt power nor does it purport to circumscribe whatever power respondent may have to require compliance with the governing statute. However, since the CPL does not require petitioner to call witnesses or put on proof at the suppression hearing, and given a district attorney's broad discretion—implicating separation of powers—in determining the manner to proceed in a criminal case (*see Matter of Holtzman v Goldman*, 71 NY2d at 573-574), respondent cannot mandate such action under threat of

contempt. It is a simple, narrow, potentially ultra vires action that is being prohibited by Supreme Court's judgment.

Respondent urges that he is merely trying to get these cases resolved in a manner consistent with the CPL and that petitioner's conduct has left him with few options (*see Matter of Cloke v Pulver*, 243 AD2d 185, 189 [1998]). Disposition of these cases should not be as complicated or time consuming as they have become. A district attorney has "unfettered discretion to determine whether to prosecute a particular suspect" (*Matter of Cantwell v Ryan*, 309 AD2d at 1042). Once prosecution of the case is pursued and pending, the district attorney remains "presumptively the best judge of whether a pending prosecution should be terminated" (*United States v Cowan*, 524 F2d 504, 513 [1975], *cert denied sub nom. Woodruff v United States*, 425 US 971 [1976]); nonetheless, at such point dismissal cannot properly be done unilaterally on the sole whim of the district attorney (*see People v Extale*, 18 NY3d 690, 695 [2012]). Significantly, a primary purpose for this limitation is to protect a defendant by preventing an abuse of power by a district attorney (*see People v Douglass*, 60 NY2d 194, 202 [1983]), such as could occur "through a prosecutor's charging, dismissing without having placed a defendant in jeopardy, and commencing another prosecution at a different time or place deemed more favorable to the prosecution" (*United States v Ammidown*, 497 F2d 615, 620 [1973]; *see Rinaldi v United States*, 434 US 22, 29 n 15 [1977]). Unless the district attorney has engaged in egregious misconduct violative of the public interest, the limitation generally will not create difficulty in obtaining swift dismissal where a defendant also desires dismissal, since various procedures are available for disposing of a pending criminal case.

For example, a motion to dismiss in the interest of justice can be made (*see* CPL 170.40; *see also* CPL 210.40). Such motion can be initiated by a defendant, a district attorney, or even by the court before which the case is pending (*see* CPL 170.40 [2]; Peter Preiser, Practice Commentaries, McKinney's Cons Laws of NY, Book 11A, CPL 170.40 at 100). Generally, a defendant moves for such relief and the People are opposed (*see e.g. People v Banks*, 100 AD3d 1190, 1190 [2012], *lv denied* 20 NY3d 1059 [2013]), but occasionally the People will make the motion and the defendant will be opposed (*see People v Extale*, 18 NY3d at 693). The parties have not cited to authority in this state where both the People and the defendant wanted dismissal, but a court's refusal to permit dismissal was upheld. This is not to say that there might not be a reason for such court action, but such cases would be rare. A prosecutor's unopposed motion to

dismiss could be denied, for example, if motivated by bad faith, such as the prosecutor accepting a bribe, acting out of animus toward the victim or other conduct that is clearly contrary to manifest public interest (*see e.g. United States v Smith*, 55 F3d 157, 159 [1995]; 4 Wayne R. LaFave et al., Criminal Procedure § 13.3 [c] [3d ed]). If such egregious conduct were implicated, a court could also seek to have the prosecutor removed by the Governor and replaced with the Attorney General (*see* NY Const, art XIII, § 13; Executive Law § 63 [2]; *Matter of Cloke v Pulver*, 243 AD2d at 189). Here, respondent acknowledges in his brief on appeal that "[n]o one suggests improper motives of petitioner in this case."

Although there are statutory criteria that must also be addressed as part of a motion to dismiss in the interest of justice (*see* CPL 170.40 [1] [a]-[j]), the criteria include a catchall (*see* CPL 170.40 [1] [j]), and there is flexibility in the manner in which the criteria are weighed and applied (*see People v Rickert*, 58 NY2d 122, 128, 132 [1983]). The Court of Appeals has observed that "the need to show that the ultimate reasons given for the dismissal are both real and compelling almost inevitably will mean that one or more of the statutory criteria, even if only the catchall (j), will yield to ready identification" (*id.* at 128). Given that petitioner and the defendants desire dismissal of these minor low-level charges, respondent denies knowledge of any ill-motive by petitioner and there is no assertion of nefarious conduct subverting justice by petitioner, it seems quite unlikely that an appropriate considering and weighing of the statutory interest of justice criteria would nonetheless require that these cases continue.

Another, but more time consuming, option is similar to the one ostensibly embarked upon by petitioner.[2] Consistent with the CPL, a district attorney can stipulate at a suppression hearing to the granting of a defendant's motion (*see* CPL 710.60 [2] [b]).[3] Further, the failure at an eventual trial to produce any inculpatory proof would result in dismissal and, since re-

---

**2.** Petitioner inappropriately indicates that interest of justice dismissal was not pursued first since prior experience with respondent revealed that the motion would not have been granted. Every case, however, is unique and, before venturing down the much more time consuming path chosen, prudence would seem to have dictated at least an effort at the economical course. Indeed, respondent appears to have invited such a motion in these cases.

**3.** The transcript of the suppression hearing does not indicate that petitioner stipulated to the granting of the defendants' motion. Rather petitioner's response to respondent's request to proceed was simply that petitioner had no intention of calling witnesses and had made a decision to decline prosecution.

prosecution would then be precluded (*see e.g.* CPL 40.20, 40.30), the primary purpose for abolishing nolle prosequi would not be implicated (*see e.g. United States v Ammidown*, 497 F2d at 620). If—unlike here—a trial judge reasonably suspected that bad faith motivated a district attorney's action, the court could (as we have previously discussed) seek Executive intervention to replace the district attorney. Absent such unusual circumstance, the district attorney's discretion ultimately will be judged at the ballot box.

We need not belabor the point any further. Where a district attorney decides not to pursue a pending case and it is not one of the rare instances where the defendant objects, or even rarer occurrences where bad faith is implicated, then avenues exist under the CPL for dismissal—some of which are more respectful than others of the taxpayers who are funding the Judiciary and the prosecutor (as well as often the defense counsel via assignment).

Stein, McCarthy and Garry, JJ., concur. Ordered that the judgment is affirmed, without costs.